S & F CORPORATION *et al.*, Plaintiffs-Appellants, *v.* MICHAEL A. BILANDIC, Acting Mayor of the City of Chicago, *et al.*, Defendants-Appellees.

First District (1st Division)   Nos. 77-309, 77-629 cons.

Opinion filed June 26, 1978.—Rehearing denied July 25, 1978.

Patrick A. Tuite and John T. Theis, both of Chicago, for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

S & F Corporation and its president, Sidney Finzelber (plaintiffs),

appeal from affirmance by the circuit court of the revocation of plaintiffs' public place of amusement, food dispenser's and cigarette dealer's licenses by Michael A. Bilandic, then acting mayor of the city of Chicago.

Plaintiffs operated a business in Chicago known as the "Candy Store" under city licenses. In November 1976, the Mayor's License Commission instituted proceedings pursuant to section 101—27 of the Municipal Code of Chicago (1976) to revoke these licenses. A hearing was held after which, on February 3, 1977, the mayor entered an order revoking all three licenses. The order contained the following findings:

"1. That on 19 November 1976, the licensee corporation, by and through its agent, BOBBIE WILSON, knowingly permitted the use of the licensed premises for the purpose of prostitution * * *.

2. That on 19 November 1976, the licensee corporation, S & F CORPORATION, dba THE CANDY STORE, by and through its agents knowingly permitted a violation of the laws of the State of Illinois to be committed on the licensed premises, to wit: Public Indecency * * *."

■■■ Plaintiffs filed a petition for certiorari in the circuit court seeking review of the revocation order. After a hearing, the circuit court affirmed the order of revocation. We note at the outset that plaintiffs are proceeding by certiorari rather than by administrative review. Since this case involves violation of an ordinance of a home rule municipality, review of the decision of the local administrative body by certiorari is proper. (*Nowicki v. Evanston Fair Housing Review Board* (1975), 62 Ill. 2d 11, 338 N.E.2d 186.) We also note that for cases brought under common law certiorari, the standard of review is similar to those brought under the Administrative Review Act. In certiorari proceedings, we will not reweigh the evidence or determine credibility nor will we overturn factual determinations of an administrative agency as long as they are not against the manifest weight of the evidence. See *S & F Corp. v. Daley* (1978), 59 Ill. App. 3d 1024, 376 N.E.2d 699, and authorities therein cited.

The evidence shows that on November 19, 1976, two undercover Chicago police officers, Thomas Cusack and Kevin Creighton, entered the Candy Store and sat at one of the tables. They were soon joined by two women, Michele Knight and Theresa Andrade. A waitress, Bobbie Wilson, asked the officers if they wished to buy drinks for the two women. When asked how much the drinks would cost, Miss Wilson replied, "$144.90" for a bottle of "Cherry Frappe," a nonalcoholic beverage.

Officer Cusack asked Michele Knight what he would receive for $144.90. She replied that she would perform an act of oral sex. Officer Creighton asked Theresa Andrade in the presence of Bobbie Wilson if he could be sure he would receive oral sex. Andrade replied that he could be sure of it. Creighton then turned to Bobbie Wilson and asked if this was correct. Wilson replied, "Yes, don't worry, you'll be taken care of."

The officers each ordered a bottle of Cherry Frappe. They paid the requested price of $144.90 and were led by Andrade and Knight to a darkened area in the rear of the establishment. Andrade and Officer Creighton went into a booth where Andrade disrobed and started to remove Creighton's clothing. Officer Creighton then stated that he wanted to have intercourse. Andrade told him that this would cost more money. She put her clothes back on and returned to the front of the premises. A few minutes later she returned with Bobbie Wilson. Wilson told Creighton that if he wanted to have intercourse it would cost another $144.90. Shortly thereafter the officers arrested the three women.

Sidney Finzelber, one of the plaintiffs, testified that the Candy Store employs females to solicit customers to purchase drinks. These employees are not allowed or instructed to give "sexual favors" for purchase of soft drinks. Of the $144.90 received from the sale of a bottle of Cherry Frappe, $30 goes to the woman who solicited the sale, $18.90 goes to the waitress as a "tip" and "the premises" receives $96. Finzelber also stated that when customers purchase a bottle they are entitled to move into a "more comfortable area" with the woman who solicited the sale. The employee is allowed to spend 15 or 20 minutes with the customer.

Plaintiffs called Bobbie Wilson, the waitress, and Michele Knight. Both denied that there was any mention of sexual matters in the discussion with the two police officers. Both corroborated the sale of soft drinks to the officers at the price of $144.90 per bottle but they denied that sexual favors were agreed upon in return for the purchases.

Plaintiffs urge that in view of these denials the evidence is insufficient to sustain the findings appealed from. Plaintiffs point out that where revocation of a license is sought by a municipality for violation of a state statute, the proof must substantiate violation of the particular statute involved. (*Daley v. Resnick* (1972), 5 Ill. App. 3d 683, 284 N.E.2d 39.) However, it should also be noted that in a license revocation proceeding the elements of the crime charged need not be proved beyond a reasonable doubt, but proof by a preponderance of the evidence is sufficient. *Ciampa v. City of Chicago* (1973), 12 Ill. App. 3d 368, 371, 299 N.E.2d 53.

■■ In our opinion, any reasonable examination of the evidence necessarily leads to the conclusion that the findings of the administrative body are both supported by clear and convincing evidence and are thus in accord with the manifest weight of the evidence. The denials by plaintiffs' witnesses merely raise questions of credibility. Such questions are properly left to the administrative body to decide.

We will next consider the contentions of plaintiffs regarding proof of the elements of the criminal statutes and proof of the culpability of the licensee.

■■ Concerning the first administrative finding, plaintiffs claim that the pertinent criminal statute limits prostitution to acts performed for "money." (Ill. Rev. Stat. 1975, ch. 38, par. 11—14(a).) Plaintiffs urge that the only consideration exchanged between the officers and the women were the bottles of Cherry Frappe.

We reject this argument. The Committee Comments accompanying the 1961 revision of the Criminal Code indicate that the requirement of "money" was inserted so as not to include "purely private, noncommercial acts." The comments go on to state that "criminal liability cannot be escaped by schemes which would avoid the direct payment of cash to the prostitute. (Such as the purchase of colored water 'champagne' in a B-joint and payment to the bartender, who later remits to the prostitute.)" Ill. Ann. Stat., ch. 38, par. 11—14, Committee Comments, at 456 (Smith-Hurd 1972).

■■ The pertinent statute also provides that "[a]ny person who performs, offers or agrees to perform * * *" an act of sexual intercourse or an act of deviate sexual conduct commits prostitution. Proof of any one of these separate acts is sufficient to constitute a violation of the statute. (See *People v. Johnson* (1976), 65 Ill. 2d 332, 336, 357 N.E.2d 1166.) In our opinion, the evidence of violation of this statute is sufficient to sustain the license revocation.

■■ The second finding pertains to public indecency (Ill. Rev. Stat. 1975, ch. 38, par. 11—9). This statute proscribes lewd exposure of the body or lewd fondling of the body of another "in a public place." Plaintiffs urge that the place of business here involved was not a public place. We cannot agree. The very act of plaintiffs in obtaining a license for operation of a public place of amusement refutes this argument. In addition, acts of public indecency need not necessarily be committed in an environment such as a crowded public sidewalk. It has been held that the commission of a lewd act in a prison cell or even in a person's own home may, under proper circumstances, be considered public indecency. (See *People v. Giacinti* (1976), 44 Ill. App. 3d 699, 702, 358 N.E.2d 934.) The evidence before us demonstrates that the interior of this establishment was in fact a public place for purposes of this section of the Criminal Code. In our opinion, the evidence amply sustains the revocation upon the second ground stated by the administrative body.

It remains to consider the argument of plaintiffs regarding culpability of the licensee. Plaintiffs properly urge that the three licenses herein involved are legally different from a liquor license regarding which the licensee is held responsible *ipso facto* for all acts or omissions of managers or other agents. (Ill. Rev. Stat. 1975, ch. 43, par. 185.) However, as above shown, the testimony of plaintiff Finzelber indicates his familiarity with the procedure of selling soft drinks for $144.90 per bottle. He specified the division of the proceeds of these sales concerning the "tip" for the

waitress and a commission to the woman who solicited the sale, with the balance going to the "premises." In our opinion, the last phase of dividing the proceeds of these sales can only mean that the licensee who operated the premises received this money. Based upon this testimony and Finzelber's intimate knowledge of the operation, it is clear to us that plaintiffs directly authorized the commission of the statutory violations here shown and accepted benefits from these transactions.

It is an established legal principle that performance of work and labor by one party for another is prima facie evidence of employment and, in the absence of contrary evidence, supports a presumption that such person is the servant of the other. (*Winston v. Sears, Roebuck & Co.* (1967), 88 Ill. App. 2d 358, 365, 233 N.E.2d 95, *appeal denied* (1968), 38 Ill. 2d 628, and authorities there mentioned, cited in the recent case of *Margaret's Restaurant & Lounge, Inc. v. Daley* (1978), 60 Ill. App. 3d 521, 377 N.E.2d 155. We note particularly in the case before us that not only is there an absence of evidence to the contrary but also the evidence adduced by the licensee strongly supports the result reached in this regard. In our opinion, both of the findings upon which the license revocations are based are supported by the manifest weight of the evidence before us.

Finally, we note also the opinion of this court involving the same licensee in *S & F Corp. v. Daley* (1978), 59 Ill. App. 3d 1024, 376 N.E.2d 699. The opinion approves the revocation of the plaintiffs' public place of amusement license and the food dispenser's license, both of which are involved in the case before us. These revocations are based upon an incident which occurred September 13, 1975, more than one year prior to the incidents detailed above. Unless the earlier decision of this court is modified by subsequent judicial action, the license revocations therein approved will render moot our decision concerning these same licenses. (See *Wheeler v. Aetna Casualty & Surety Co.* (1974), 57 Ill. 2d 184, 311 N.E.2d 134.) However, our decision is necessary in any event because it also involves the license issued to plaintiffs to conduct the business of a cigarette dealer.

The order of revocation herein appealed from is accordingly affirmed.

Order of revocation affirmed.

McGLOON and BUCKLEY, JJ., concur.