HORACIO N. LOPEZ, d/b/a Shorty's Tap, Plaintiff-Appellant, *v.* ILLINOIS LIQUOR CONTROL COMMISSION *et al.*, Defendants-Appellees.

Second District   No. 82—926

Opinion filed December 29, 1983.

Donald H. Geiger, of Waukegan, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Michael J. Cummins, of Waukegan (Kathleen M. Lien, Assistant Attorney General, of counsel), for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

The holder of a local liquor license appeals from the revocation of his license, which was affirmed in the circuit court of Lake County. Because much of the evidence of wrongful conduct was not fairly related to the control of liquor, we reverse and remand for the imposition of a sanction, if any, less than revocation.

Plaintiff, Horacio N. Lopez (Lopez), had a city of Waukegan liquor license to operate a tavern known as Shorty's Tap. At the time of the occurrences at issue here, Lopez' son Temo was acting as manager of the tavern. On the evening of November 30, 1981, while Temo was beginning to close the tavern, three black men entered with a television set and attempted to sell it to one of the patrons. Temo told them to leave and they argued. Temo and two of his patrons physically fought with the three men to force them out. The three left, leaving the television set behind.

A few minutes later, as Temo continued the process of closing the tavern, he received a telephone call from his father. The three men ejected by Temo had proceeded to Lopez' home located about a block from the tavern. Temo grabbed a pistol kept inside the bar and, along with two patrons, went to the Lopez home. There, a fight ensued between the three black men and Temo and his friends. The three black men entered their car to drive away. Shots were fired at the fleeing

car, both by Temo with the gun from the bar and by Lopez with a gun from the house. The car was later examined by police and found to be damaged by bullet holes and to have blood on one seat.

Temo returned to the tavern. Several policemen then arrived and saw Temo reloading his gun. Temo was in a very agitated state, waving his arms around, yelling and screaming obscenities at the black men. He appeared intoxicated to at least two of the officers. He refused to cooperate with the police and was arrested.

Defendant Waukegan Liquor Control Commission revoked Lopez' local liquor license on the basis of the recited incidents. That revocation was affirmed by defendant Illinois Liquor Control Commission. Lopez then filed a complaint for administrative review in the circuit court, which also affirmed the revocation. Lopez now appeals to this court, contending that (1) his right to due process was violated in various ways in the proceedings before the local liquor control commission, (2) the decision of that commission was against the manifest weight of the evidence, and (3) the sanction of revocation was too severe under the circumstances of this case.

■■■ With regard to the first contention, we note that, although a liquor license constitutes a privilege and not a right, a person is entitled to fair treatment in the granting, denial, suspension or revocation of these licenses. (*Jager v. Illinois Liquor Control Com.* (1979), 74 Ill. App. 3d 33, 392 N.E.2d 176.) A licensee at a hearing for revocation or suspension of his liquor license must be afforded the basic rights of procedural due process. *Golden Egg Club, Inc. v. Illinois Liquor Control Com.* (1970), 124 Ill. App. 2d 241, 260 N.E.2d 329.

First, Lopez maintains that his right to due process was violated by the fact that there were no standards of procedure or rules of evidence to be followed in the revocation hearing before the local liquor control commission. As an illustration of the prejudice resulting from this lack of standards, he points to one instance where an out-of-court statement was allowed into evidence over his counsel's objection that it was hearsay.

Section 5 of article VII of the Liquor Control Act, a/k/a the Dramshop Act, sets out the procedures required before a local liquor control commissioner may revoke or suspend a local liquor license. (Ill. Rev. Stat. 1979, ch. 43, par. 149.) The provisions of this statute, read together with the case law and the requirement that a licensee must be afforded the basic rights of procedural due process, constitute sufficient procedural and evidentiary standards.

■■ With regard to the alleged use of hearsay evidence, the evidentiary rule against the use of hearsay has been held applicable gen-

erally to license revocation hearings before a local liquor control commissioner. (*Cox v. Daley* (1981), 93 Ill. App. 3d 593, 417 N.E.2d 745; see *Starnawski v. License Appeal Com.* (1981), 101 Ill. App. 3d 1050, 428 N.E.2d 1102; *Rincon v. License Appeal Com.* (1978), 62 Ill. App. 3d 600, 378 N.E.2d 1281.) In admitting the challenged testimony over Lopez' hearsay objection, the commissioner here did not indicate a belief that hearsay evidence was admissible. Rather, he overruled the objection after the attorney for the local commission argued that the out-of-court statement was offered, not for its truth, but for the fact that the statement was made. Lopez' assignment of error is not that this particular alleged hearsay was improperly admitted, but rather that his right to due process was violated by the lack of rules barring incompetent evidence such as hearsay. Whether or not this particular alleged hearsay was improperly admitted, the commissioner's treatment of it does not demonstrate a failure to abide by the rules of evidence so as to violate procedural due process.

Lopez next maintains that he was denied due process in that the notice of charges against him did not adequately advise him of the precise law or ordinance he had allegedly violated. Section 5 of article VII of the Liquor Control Act permits revocation if the licensee has violated any of the provisions of that act or any ordinance of the municipality or any rule of the local liquor control commission. (Ill. Rev. Stat. 1979, ch. 43, par. 149.) Case law has required the specific itemization of the statute, ordinance, rule or regulation the licensee is charged with violating. *Beer & Brat, Inc. v. Illinois Liquor Control Com.* (1976), 44 Ill. App. 3d 713, 358 N.E.2d 736; *Daley v. Resnick* (1972), 5 Ill. App. 3d 683, 284 N.E.2d 39.

■ The local commission's notice of charges and hearing on suspension or revocation of liquor license addressed to Lopez alleged that certain conduct constituted "a breach of the peace and a menace to the health, safety and welfare of the public in violation of Section 24—11—3 and 4—27(2) of the City of Waukegan Ordinance and Chapter 43, Illinois Revised Statutes, Section 120(2), 149 and 185 [and] Rule 3 (1(a) and (4)) of the Rules and Regulations of the Illinois Liquor Control Commission." This specifically itemizes the statutes, ordinances, rules or regulations Lopez was charged with violating by the conduct alleged in the notice. Lopez' arguments to the effect that the evidence did not support the findings that these laws had been violated go to his sufficiency-of-the-evidence issue. We hold that he was given sufficient notice of the violation charged.

■ Lopez' final argument with regard to due process is that he was denied a fair and impartial hearing. Administrative due process

requires a full and impartial hearing. (*Cox v. Daley* (1981), 93 Ill. App. 3d 593, 417 N.E.2d 745.) Lopez maintains that this requirement was violated here because there was no division among the police, prosecutorial, and adjudicatory functions. He points out that the police chief and the counsel for the commission, who prosecuted him, are answerable to the mayor and the mayor sits in judgment at the revocation hearing as chairman of the local liquor control commission.

However, the combination of the judging and investigating or prosecuting functions in the same agency is not a violation of due process. (*Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42; *American Acoustic & Plastering Co. v. Department of Revenue* (1982), 107 Ill. App. 3d 616, 437 N.E.2d 419.) Although conferring investigative and adjudicative powers on the same individuals may create the possibility of an unconstitutional risk of bias, one who asserts this contention necessarily carries or assumes a difficult burden of persuasion: he must overcome the presumption of honesty and integrity in those serving as adjudicators and he must convince that, under a realistic appraisal of psychological tendencies and human weaknesses, conferring the dual powers poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. *Scott v. Department of Commerce & Community Affairs* (1981), 84 Ill. 2d 42, 55-56, citing *Martin-Trigona v. Underwood* (7th Cir. 1975), 529 F.2d 33, 37.

Here, Lopez merely notes one question put by the mayor to the police chief at the revocation hearing. The mayor asked, in light of the earlier testimony regarding a stolen television set brought to the tavern, whether there had ever been reports that there was a fencing operation at the tavern. Lopez suggests that the "obvious innovation" for this question had to have been prior discussions between the mayor and the police chief. However, the mayor certainly might have thought of the question himself. In any event, we hold that this does not meet the heavy burden described in *Scott* to establish a due process violation.

Lopez next contends that the decision of the local commission was against the manifest weight of the evidence. For purposes of review, findings of a local liquor control commission are *prima facie* true and correct. (*Crazy Horse, Inc. v. Byrne* (1981), 97 Ill. App. 3d 434, 422 N.E.2d 1074.) The trial court and appellate court may not reweigh the evidence but must determine whether the result reached is just and reasonable in light of the evidence presented; the appellate court may set aside the decision of the local liquor control commission

only if the manifest weight of the evidence supports the opposite conclusion. *Crazy Horse.*

Here, the local liquor control commission's order enumerated its findings of facts as follows:

"1. On November 30, 1981, and for a period of approximately three years prior to that date, Horacio N. Lopez, licensee, had relinquished the control and operation of the licensed premises to his two sons.

2. On the aforesaid date, Temo Lopez, son of the licensee, and in his capacity as an employee and manager of the licensee, by physical force, ejected three individuals from the licensed premises who were attempting to sell, while on the premises, what was suspected to be a stolen television.

3. At that time Temo Lopez consciously knew he was retaining possession of the television set while forcing the three individuals who were in possession of it to leave.

4. The three individuals then proceeded to the licensee's home to complain about these events at which time a serious altercation occurred, which involved both the licensee and his son, Temo, discharging firearms at the same three individuals as they attempted to leave the home of Horacio N. Lopez. It appears one of the three individuals was wounded by one of the gun shots.

5. The gun used by Temo Lopez was a 25-caliber pistol, which was kept loaded under the counter of the bar at the licensed premises.

6. When police arrived at the licensed premises, Temo had returned and was found at the bar reloading the weapon.

7. Temo refused to cooperate with the police in investigating the series of events originating inside the tavern and continuing on to the residence of the licensee, Horacio N. Lopez.

8. There has been no testimony offered by the Respondent that the 25-caliber weapon taken from the bar in pursuit of the three individuals was legally registered to either the licensee, Horacio N. Lopez, or the manager, Temo Lopez.

9. As a result of Temo Lopez' conduct, not only did he disrupt the investigation of the aforesaid incidents, but he struck one of the police officers present.

10. That the action of Temo Lopez and Horacio N. Lopez in reaction to the incident arising out of the operation of the tavern is sufficiently related to the operation of the tavern to be considered as just cause of revocation or suspension of the liq-

uor license in question.''

Our examination of the record has shown each of the first nine findings to be sufficiently supported by testimony, with the following exceptions. First, finding no. 3 states that Temo Lopez consciously retained possession of the television set after forcing the three men to leave the tavern. This might be read to imply that Temo intended to wrongfully retain possession of the property of someone else. The only testimony on this point was given by Temo and two patrons of the tavern that evening, David Martinez and Alfredo Casillas. The testimony of all three is consistent: the three black men who entered the tavern to sell the television set left it behind after Temo and others fought them to force them to leave the premises. Temo then instructed Casillas to ''get it out of here'' before leaving to go to his parents' home. Casillas testified that Temo wanted him to get the set out of the business in case the police arrived ''in case it was hot stuff.'' Casillas stated that he put it next door and gave it to the police when they subsequently asked him to get it.

The evidence does not show that Temo had an intention to retain the television set. Rather, he was concerned with forcing the three men to leave and with not letting the police see stolen property in his tavern. The worst that can be said about Temo's conduct with regard to the television set is that he failed to immediately call the police to pick it up and that he tried to conceal it from them, not to retain it, but for fear of the repercussions of possessing stolen property.

Second, finding no. 8 states that Lopez offered no testimony that the gun kept at the tavern and used by Temo was registered to either Temo or his father. While this is a true statement, it does not alone establish any wrongful conduct. Aside from the question of the burden of proof, the commission does not cite any authority establishing a legal duty upon either Lopez or his son to have the gun registered to his name. The circuit court, in its order affirming the actions of the local commission and the State commission, found that there was sufficient evidence to warrant the revocation ''regardless of the questionable charge of possession by defendant [sic] of a non-registered gun behind the bar of the licensed premises.''

Third, finding no. 9 stated that Temo ''struck one of the police officers present.'' The testimony of the five policemen present, including the officer who was struck, all presented the same version of events: as Temo waved his arms around in a highly agitated manner, his hand struck one of the officers. While Temo was being uncooperative and disorderly, the evidence does not show that Temo struck

a policeman with the intent to do bodily harm.

■■■ It is with regard to finding no. 10, however, where we make our most significant departure from the local commission. Statutorily, the violation of any statute, ordinance or regulation generally constitutes just cause for revocation of a liquor license. (Ill. Rev. Stat. 1979, ch. 43, pars. 112, 149; see *Askew v. Daley* (1978), 62 Ill. App. 3d 370, 379 N.E.2d 75.) It has been held, however, that reasonable statutory construction limits this rule to violations of statutes, ordinances, or regulations that are fairly related to the control of liquor. (*Askew; Nappi v. License Appeal Com.* (1977), 50 Ill. App. 3d 329, 365 N.E.2d 612.) The local liquor control commissioner in determining cause for revocation is vested with broad discretionary power to be exercised reasonably. *Askew.*

The gravamen of the charges against Lopez is that his manager, Temo, breached the peace and menaced the public safety in violation of Waukegan ordinances by using physical force to eject the three men with the television set, continuing the altercation at his parents' home, together with Lopez shooting firearms at the men or their automobile, and refusing to cooperate with the police and disrupting their investigation. It is clear that the licensee, Lopez, may be held responsible for the conduct of his employee and manager, Temo, under the Liquor Control Act. (Ill. Rev. Stat. 1979, ch. 43, par. 185; *Byrne v. Stern* (1981), 103 Ill. App. 3d 601, 431 N.E.2d 1073.) It is also clear that the act by the licensee or his agent of discharging a weapon on the licensed premises at a patron may generally be considered just cause for revocation. (See *Cox v. Daley* (1981), 93 Ill. App. 3d 593, 417 N.E.2d 745; *Daley v. Richardson* (1968), 103 Ill. App. 2d 383, 243 N.E.2d 685; *Daley v. Kilbourn Club, Inc.* (1965), 64 Ill. App. 2d 235, 211 N.E.2d 778.) This is especially so when the offender fails to notify the police about the altercation. (See *Collins v. Daley* (1970), 131 Ill. App. 2d 108, 266 N.E.2d 453; *Tice v. License Appeal Com.* (1971), 3 Ill. App. 3d 125, 278 N.E.2d 540 (abstract).) However, in *Nappi v. License Appeal Com.* (1977), 50 Ill. App. 3d 329, 365 N.E.2d 612, the firing of a gun at her husband by a barmaid was not cause for revocation where she was not acting within the scope or course of her employment nor in furtherance of the licensee's business. The *Nappi* court held that the purely personal act of the barmaid, while constituting the offense of aggravated battery, was not fairly related to liquor control.

■■■ The important question here is whether Lopez' and Temo's conduct at the former's home was fairly related to the control of liquor. All of the cases cited in the preceding paragraph involved con-

duct which took place on the licensed premises. While the dispute here originated at the tavern and Temo returned there, the firing of the weapons took place at Lopez' home. The dispute originated at the tavern where Temo ejected the men in an attempt to control the activities and patrons of the establishment. He did not, however, immediately pursue them. Rather, he only left the tavern after his father called, at which point Temo believed the personal safety of his parents to be threatened. The altercation that took place at the Lopez home was not only physically removed from the licensed premises, but also removed from the motive of control over the activities and patrons of the tavern. Thus, the conduct of Temo and Lopez off the licensed premises, like that of the barmaid in *Nappi*, was personal and not fairly related to liquor control.

After noting the bases for "cause" in several liquor license revocation cases, the court in *Weinstein v. Daley* (1967), 85 Ill. App. 2d 470, 482, 229 N.E.2d 357, 364, summarized that the cases evidence "judicial recognition of the public's increased susceptibility to vice and corruption in the presence of alcoholic beverages." While this is not necessarily to say that only conduct taking place on a licensed premises may serve as just cause for liquor license revocation, it does emphasize that the Liquor Control Act will be reasonably construed so that only offenses fairly related to the control of liquor may so serve.

Subtracting the conduct at the Lopez home from the charges against Lopez and keeping in mind our exceptions to the findings of the local commission, we are left essentially with Temo's forcible ejection of the three men, his failure to immediately notify the police about the television set he believed to be stolen, and his disruptive behavior and lack of cooperation with the police who arrived at the tavern after it was closed. Under the circumstances of this case, we hold that this conduct alone was insufficient to warrant the revocation of Lopez' license and that the imposition of that sanction was an abuse of discretion by the local commission. See *Byrne v. Stern* (1981), 103 Ill. App. 3d 601, 431 N.E.2d 1073.

Accordingly, we reverse the order of the circuit court of Lake County and remand to the Waukegan Liquor Control Commission for the imposition of a reasonable sanction, if any, less than revocation and consistent with this opinion.

Reversed and remanded.

NASH and REINHARD, JJ., concur.