ROBERT E. CONNOR, d/b/a Heinze Liquors, Plaintiff-Appellee, v. THE CITY OF CHICAGO et al., Defendants-Appellants.

First District (5th Division)   No. 1—03—0941

Opinion filed December 10, 2004.

Mara S. Georges, Corporation Counsel, of Chicago (David La Raus, Assistant Corporation Counsel, of counsel), for appellants.

Brown, Udell & Pomerantz, of Chicago (James R. Donoval, of counsel), for appellee.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendants, City of Chicago (City), Richard M. Daley, Winston Mardis and the Mayor's License Commission (MLC), appeal the order of the circuit court reversing the decision of the Local Liquor Control Commissioner (LLCC) to suspend plaintiff's liquor license for 15 days for permitting and engaging in acts of gambling on its premises. Upon appeal, defendants argue: (1) the trial court erred in finding that the LLCC's decision was against the manifest weight of the evidence; and (2) plaintiff waived his due process argument when he failed to raise the issue during the hearing. We reverse.

At the hearing before the LLCC to revoke plaintiff's license, Officer James Henneghan testified that on November 6, 1999, he entered plaintiff's establishment in plain clothes, sat at the bar and ordered a beer. The bartender gave him change from the register. As he sat, Officer Henneghan noticed a man playing a video game at one of three machines located directly across from him. Officer Henneghan recognized the machine as a "Cherrymaster" whereby a player purchases credits and bets credits on a scrolling screen that displays pictures in a row. The player wins or loses credits based upon the pictures appearing on the screen. If a player loses all of his credits, he can either stop playing or insert more money into the machine. A player may also be paid money corresponding to the number of credits he has accumulated. The credit total is cleared to zero by pressing a button. Officer Henneghan testified that the Cherrymaster is a game of pure chance, not skill.

The man continued playing and Officer Henneghan observed him insert money into the machine. After playing for about an hour, the man stopped, stood up and called or motioned to the bartender, Verna Egert. From behind the bar, Egert looked at the machine, which showed that the man had accumulated 1,100 credits, and she nodded and motioned for the man to follow her. As they walked, Officer Henneghan noticed that the credits total was scrolling down to zero. Officer Henneghan saw Egert take United States currency from the register and hand it to the man, who then took the money and left the premises.

Although Officer Henneghan did not arrest the man or learn his identity, he subsequently applied for a search warrant based upon his

observations. On November 8, 1999, after the warrant was issued, Officer Henneghan returned with other officers and seized the circuit boards of the video machines as well as currency found inside the machines. The officers issued a criminal citation to Egert.

Officer Ollie Gavin testified that on November 12, 1999, he entered plaintiff's establishment in plain clothes and sat at the bar. He ordered a beer and the bartender gave him change from the register. Apparently, new circuit boards were installed and Officer Gavin observed a man playing Cherrymaster. Officer Gavin stated that the game was one of chance, not skill. The man continued to play the game for approximately 30 minutes and Officer Gavin saw the man place money into the machine approximately four times during that period. When the man stopped playing, he turned and waved toward the bartender. The bartender looked at the machine from behind the bar and it showed 400 credits. She took the man to one of the cash registers and removed some currency which she gave to the man. The man then left the premises. After leaving, Officer Gavin obtained a warrant based upon his observations, and on November 16, 1999, pursuant to the warrant, police officers seized the three video amusement machines and the cash inside.

On January 3, 2000, Officer Moises Flores entered plaintiff's establishment in plain clothes. Officer Flores sat at the bar and directly across from him were three video amusement machines. Officer Flores ordered a beer and observed a man playing Cherrymaster. Officer Flores testified that the game was one of chance, not skill.

The man continued to play the game for approximately 20 minutes in Officer Flores' presence, and once during that time the man inserted money into the machine. When he finished playing, the man left the machine and spoke briefly to the bartender. The bartender looked at the machine, which showed 4,000 credits, and then nodded and made some motions. The player returned to the machine and pushed a button which cleared the points from the screen. The bartender then took money out of the cash register and handed it to the man. As the man started to leave the premises, Officer Flores stopped him and issued criminal citations to the man and to the bartender. Officer Flores then had the machines opened and he confiscated the currency inside.

The City sought to revoke plaintiff's liquor license, based upon 17 charges.[1] The charges allege that on each of the three occasions outlined above, plaintiff participated in and wagered upon a game of chance, managed or permitted its premises to be used for gambling,

---

[1]Three other charges pertaining to a pistol seized during a search on November 16, 1999, were withdrawn before the LLCC reached its decision.

and kept a gambling place, thereby maintaining a public nuisance. The hearing officer found the testimony of the officers to be "credible, reliable and uncontradicted" and that the City sustained its burden of proof upon all 17 charges. He then determined that a 15-day suspension upon each charge, served concurrently, was an appropriate sanction. The License Appeal Commission (LAC) affirmed the LLCC's decision. Upon administrative review, the trial court reversed the decisions of the LLCC and the LAC because it found "that there is no evidence in the record to support an intent to gamble by the licensee." The LLCC filed this timely appeal.

■ Upon appeal, this court reviews the administrative agency's decision and not that of the trial court. *Daley v. El Flanboyan Corp.*, 321 Ill. App. 3d 68, 71 (1998). Furthermore, review is limited to whether the agency's factual findings are against the manifest weight of the evidence and whether the findings support the sanction given. *El Flanboyan*, 321 Ill. App. 3d at 71. A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998). An administrative agency's decision is not against the manifest weight of the evidence, and must be sustained upon appeal, if there is any evidence in the record supporting the agency's decision. *Leong v. Village of Schaumburg*, 194 Ill. App. 3d 60, 65 (1990). The mere fact that the opposite conclusion is reasonable, or that a reviewing court would have ruled differently, does not render an agency's decision as against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992).

■ Here, three officers testified without contradiction that on three separate occasions they observed a man playing a Cherrymaster machine. On all three occasions, the players inserted money into the game to continue playing, and when they stopped playing, they had accumulated a number of credits. The players approached the bartender, who looked at the machine and then motioned for them to follow. On two occasions, the officers noticed that the total credits on the screen scrolled down to zero. The bartender then gave the players some cash from the register after which the players left the premises. The officers did not observe any of the players engage in any other activities, nor did they observe that the players were being paid by the bartender for services performed or for a refund on a tab.

Although there is no direct evidence of wagers and payoffs, the circumstantial evidence is sufficient to support the LLCC's decision. See *People v. Diesel*, 128 Ill. App. 2d 388, 394-95 (1970) (police observation that defendant and others were seated at a table with cards in

their hands and currency in front of them constituted sufficient circumstantial evidence to find defendant guilty of gambling beyond a reasonable doubt, although officers never observed actual wagers); see also *People v. Galan*, 110 Ill. App. 2d 98, 100 (1969) (circumstantial evidence has the same weight and validity in gambling cases as in other offenses). The LLCC's findings are not against the manifest weight of the evidence. Therefore, the trial court erred when it reversed the decisions of the LLCC and the LAC.

Plaintiff, however, contends that defendants were required to present substantial evidence of plaintiff's intent to engage in gambling. The case cited by plaintiff, *Finnerty v. Personnel Board*, 303 Ill. App. 3d 1 (1999), holds that courts must review agency decisions under the manifest weight standard unless a statute specifically states that review must be under the substantial evidence standard. *Finnerty*, 303 Ill. App. 3d at 11. However, no statute here requires courts to review the LLCC's and LAC's decisions under the substantial evidence standard. The statute cited by plaintiff, section 7—9 of the Liquor Control Act of 1934 (235 ILCS 5/7—9 (West 2002)), sets forth the standard by which the LAC reviews the LLCC's decisions, not the standard for judicial review of the LLCC's and LAC's decisions. Accordingly, the manifest weight standard applies.

Further, even if the substantial evidence standard applied, the outcome would be the same. Substantial evidence has been defined as " 'more than a mere scintilla' " and also as " ' "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [Citation.]' " *Finnerty*, 303 Ill. App. 3d at 11, quoting *Richardson v. Perales*, 402 U.S. 389, 401, 28 L. Ed. 2d 842, 853, 91 S. Ct. 1420, 1427 (1971). The testimony of the three officers constituted substantial evidence of plaintiff's intent to engage in gambling. See our discussion above.

Plaintiff also argues that the circumstantial evidence presented by defendants does not support a finding of illegal gambling because it did not eliminate all other explanations for why the bartender paid the men cash from the register. Plaintiff relies upon Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 3.02) and *People v. Crow*, 108 Ill. 2d 520 (1985), which approved of that paragraph of the jury instruction. IPI Criminal 2d No. 3.02, which addresses circumstantial evidence in a criminal case, instructs jurors that they "should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence." However, our supreme court has explained that this language is an attempt "to express the reasonable-doubt standard in the vocabulary of circumstantial evidence." *People v. Bryant*, 113 Ill.

2d 497, 511 (1986). The reasonable doubt standard does not apply to license revocation cases. See *S&F Corp. v. Bilandic*, 62 Ill. App. 3d 193, 196 (1978) ("in a license revocation proceeding the elements of the crime charged need not be proved beyond a reasonable doubt, but proof by a preponderance of the evidence is sufficient").

Next, plaintiff argues that he was denied due process because the police officers did not arrest or identify the Cherrymaster players. Plaintiff contends that, as a result, he could not confront these witnesses. Plaintiff waived review by failing to raise this due process issue before the administrative agency. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278 (1998). The waiver rule applies even to constitutional issues. *Texaco*, 182 Ill. 2d at 278-79.

Plaintiff's argument also fails on the merits. Plaintiff cites a number of cases holding that a due process violation occurs where the State loses or destroys physical evidence that was material to the defense. Those cases are inapposite, as the police officers did not lose or destroy any physical evidence. Rather, plaintiff's argument relates to the officers' alleged failure to identify the Cherrymaster players. The police issued a criminal citation to one of the three Cherrymaster players, but plaintiff did not call him to testify. Plaintiff has not argued that the City in any way prevented him from investigating, identifying, and subpoenaing the Cherrymaster players, nor has plaintiff made any showing that the Cherrymaster players would have been favorable to his defense. Plaintiff's due process argument fails in the absence of any showing of prejudice. See *United States v. Valenzuela-Bernal*, 458 U.S. 858, 73 L. Ed. 2d 1193, 102 S. Ct. 3440 (1982).

Reversed.

CAMPBELL, P.J., and GALLAGHER, J., concur.