FIRST DIVISION
JULY 14, 2008

No. 1-07-0239

| | | |
|---|---|---|
| BOOM TOWN SALOON, INC., Licensee, and EUGENE PERRY, President, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) | |
| v. | ) ) | |
| THE CITY OF CHICAGO, a Municipal corporation, RICHARD M. DALEY, as both Local Liquor License Commissioner and Mayor, SCOTT BRUNER, Director of the Mayor's License Commission, ROBERT NOLAN, Hearing Officer for the Mayor's License Commission, the MAYOR'S LICENSE COMMISSION, THE LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO, ANTHONY CALABRESE, IRVING KOPPEL, DON ADAMS and PHILIP J. CLINE, Chicago Police Superintendent, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 06 CH 5562

The Honorable Mary Ann Mason, Judge Presiding. |
| Defendants-Appellees. | ) | |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiffs Boom Town Saloon, Inc., and Eugene Perry, Boom Town's president, appeal the order of the circuit court of Cook County affirming the decision of the Local Liquor Control Commissioner (LLCC). The LLCC revoked Boom Town's liquor license for allegedly committing acts of gambling. On appeal, plaintiffs claim that the LLCC's findings of gambling were against the manifest weight of the evidence. We agree, and therefore reverse.

BACKGROUND

Defendant City of Chicago sought to revoke plaintiff Boom Town's liquor license based on charges that Boom Town engaged in gambling; that it operated, kept, or used a gambling device; and that it kept a place of gambling. The charges involved three sections of the Criminal Code of 1961 (720 ILCS 5/28-1(a)(3), 28-3, 37-1 (West 2004)), and two sections of the Chicago Municipal Code (Chicago Municipal Code §§8-12-010, 8-12-030 (1990)) .

At the administrative hearing before the LLCC, Officer Mark Sobczyk of the vice control section testified that at 7 p.m. on March 4, 2004, he entered Boom Town in plain clothes by himself, sat down at the bar, and ordered and paid for a drink. The bartender identified herself as "Denise."

Sobczyk noticed another patron of the bar approach a "Fruit Bonus Number 9" video poker machine. Sobczyk explained that to play the game, the player inserts money into the machine, which registers a corresponding number of "credits." The player hits a button to place a "bet" with the credits, and hits another button, which prompts icons on the screen to roll. Depending on how the icons stop, the player either loses the credits, or earns additional credits.

Officer Sobczyk watched the patron insert money into the machine and manipulate its buttons. At the time, the machine was 25 to 28 feet away from the officer's seat. Sobczyk left his seat and walked to within 10 feet of the machine, where he noticed that credits had appeared in its left corner. Sobczyk returned to his seat.

Officer Sobczyk testified that the patron played for 38 minutes and then approached the bar. Officer Sobczyk again left his seat and walked to within 10 feet of the machine, where he

observed an amount of credits on the screen. Sobczyk could not see the exact number of credits, but he testified it was a four-digit number. Sobczyk's testimony continued:

"MS. NAVE [Assistant Corporation Counsel]: What did you do next?

OFFICER SOBCZYK: In the meantime while I was doing this, the player, as I said, who had been approaching the bar, by this time had made it to the bar at which point he called out to the bartender.

MR. TOUHY [Defense Counsel]: I object and move to strike it out as hearsay.

MS. NAVE: It's not hearsay. It's not a statement--he's just testifying what he observed.

COMMISSIONER NOLAN: Are you offering it for the truth of the matter asserted?

MS. NAVE: No, I am not.

COMMISSIONER NOLAN: Then it's not hearsay. I'll overrule it.

* * *

MS. NAVE: What happened after you observed the player call out to the bartender?

3

OFFICER SOBCZYK: I then concentrated my observations on the bartender and the player.

MS. NAVE: What did you observe?

OFFICER SOBCZYK: I observed the player using his thumb over his shoulder and pointing toward the machine.

MR. TOUHY: I'm going to object and move to strike this out as hearsay and no proper foundation laid.

COMMISSIONER NOLAN: Overruled.

MR. TOUHY: And there's no foundation establishing that this is the kind of testimony that would be [relied] upon [by] a reasonably prudent person.

COMMISSIONER NOLAN: I don't believe it's hearsay, so there's no reason for that requirement. I'm merely taking it as his describing what the conduct was that he observed.

MS. NAVE: Officer, what did you observe after you saw the player point his thumb towards the machine?

OFFICER SOBCZYK: The bartender nodded in the affirmative.

MR TOUHY: I object; move to strike it out, hearsay, nonverbal.

COMMISSIONER NOLAN: But by an agent of the

corporation, so it's overruled as an exception."

Officer Sobczyk testified that after the bartender nodded, the bartender turned around and entered a storage area behind the bar. She exited within 15 seconds with money, which she handed to the patron. Sobczyk could not see the denomination of the bills or how many bills were given. The patron ordered a drink and paid for it with the money. The patron finished his drink and left. Sobczyk left a short time later, and obtained a search warrant for the premises.

Officer Sobczyk testified that, on the following day, March 5, 2004, he returned to Boom Town to execute the warrant. The bartender working at that time telephoned the bartender named Denise, who came to Boom Town. When she arrived, Sobczyk issued her an ordinance complaint ticket.

Officer Sobczyk testified that he seized $170 from the video poker machine and the machine itself. He did not recover any money, paraphernalia, documents, or other evidence of gambling from the back storage area.

Plaintiffs presented testimony from bartender Denise Pietz. Pietz testified that she tended the bar on March 4, 2004. She kept her "bank" in a register drawer and did not keep any money in the back area. She also testified that she was not involved in any gambling activities.

Pietz testified that the Fruit Bonus Number 9 video poker machine at issue in this case had been malfunctioning during the week of March 4. The machine would "jam up," meaning it would not accept a player's money, and "freeze." If a customer complained about a malfunction, Denise would "take the customer's word for it" and refund the player up to $5. Larger refunds were at the discretion of the owner, Eugene Perry. Pietz would refund customers with money

from the register drawer.

Pietz testified that she refunded $5 to a customer named John on March 4, 2004. Concerning the refund, Pietz testified that she went from behind the bar to look at the machine, determined the machine was frozen, unplugged the machine to reset it, and gave John $5.

Bryan Bandyk, an employee of Shamrock Amusement Company, testified and identified two work service tickets. The first ticket was created on March 1, 2004,[1] in response to a call from Boom Town indicating the dollar bill intake was sticking on a poker machine. Bandyk went to Boom Town that evening and fixed the machine. The second ticket was created on March 5, 2004, indicating a Boom Town machine needed a new monitor. When Bandyk inspected the monitor later that day, he found it was sticking.

Plaintiff Eugene Perry, Boom Town's president, also testified. Perry identified Boom Town's financial records for March 4, 2004, which indicated two $10 refunds were made to customers. He also testified that the machine seized on March 5 was the one that had been malfunctioning.

Plaintiffs offered into evidence a 236-page document consisting of letters from customers and neighbors demonstrating their support for the establishment. The letters, which were either undated or from 2001, were in response to a previous charge Boom Town faced alleging it had served alcohol to a minor. Defendant City of Chicago offered a record of Boom Town's prior

---

[1] Bandyk's testimony refers to the year 2005. The tickets in the record, however, show a year of 2004.

No. 1-07-0239

violations, discussed below.

The LLCC found Officer Sobczyk to be "credible and believable" and concluded that the City had sustained its burden as to all five charges. The LLCC found that revocation was the proper sanction "based upon the totality of the circumstances, including this licensee's prior record." With respect to the charges, the LLCC made the following findings:

"3. I find that on March 4, 2004, the licensee, by and through its agent, engaged in a game of chance or skill for the purpose of gambling for money on the licensed premises, to wit: paying out on a video slot machine, in violation of Title 8, Chapter 12, Sec. 010 Municipal Code of Chicago.

4. I find that on March 4, 2004, the licensee, by and through its agent, while on the licensed premises operated, kept and used a gambling device, to wit: a Fruit Bonus #9 video slot machine in violation of 720 ILCS 5/281 (a)(3).

5. I find that on March 4, 2004, the licensee, by and through its agent, owned, maintained and managed a premises used for the purpose fo permitting persons to gamble for any valuable thing, to wit: United States Currency, in violation of Title 8, Chapter 12, Sec. 030 Municipal Code of Chicago.

6. I find that on March 4, 2004, the licensee, by and

**7**

through its agent, knowingly allowed the licensed premises to be used for the purposes of gambling, in violation of 720 ILCS 5/28-3.

7. I find that on March 4, 2004, the licensee, by and through its agent, maintained a public nuisance on the licensed premises in violation [of] 720 ILCS 5/37-1, in that the premises were used for the commission of the violation of 720 ILCS 5/28-3, to wit: keeping of a gambling place."

Defendant License Appeal Commission (LAC) affirmed the LLCC's decision. The circuit court subsequently affirmed "for the reasons stated in open court." In court on December 20, 2006, the circuit court stated that the hearing officer could find that the city had sustained its burden of proof based on the following facts: "the officer observe[d] a patron playing the machine for over a half a hour and then the patron approache[d] the bartender, and there [was] an exchange of money." This timely appeal followed.

ANALYSIS

Plaintiffs claim on appeal that the commissioner's findings were against the manifest weight of the evidence presented at the revocation hearing. A liquor license cannot be revoked or suspended "except after a public hearing." 235 ILCS 5/7-5 (West 2006). At the revocation hearing, the licensee "must be afforded the basic rights of procedural due process." Lopez v. Illinois Liquor Control Comm'n, 120 Ill. App. 3d 756, 760 (1983).

No. 1-07-0239

Standard of Review

When a party appeals the decision of an administrative agency, the appellate court reviews the decision of the administrative agency, not the decision of the circuit court. Connor v. City of Chicago, 354 Ill. App. 3d 381, 384 (2004); Daley v. El Flanboyan Corp., 321 Ill. App. 3d 68, 71 (2001). An appellate court will reverse the decision of the administrative agency only if the decision was against the manifest weight of the evidence or if the agency's findings did not support the imposed sanction. Connor, 354 Ill. App. 3d at 384; El Flanboyan, 321 Ill. App. 3d at 71. If there is any evidence in the record that fairly supports the agency's decision, then the decision is not against the manifest weight and the decision must be affirmed on appeal. Connor, 354 Ill. App. 3d at 384; El Flanboyan, 321 Ill. App. 3d at 71. An appellate court may not reverse simply because it would have ruled differently in the first instance or because the opposite conclusion is also reasonable. Connor, 354 Ill. App. 3d at 384 ; El Flanboyan, 321 Ill. App. 3d at 71. In reviewing the record, the appellate court must bear in mind that circumstantial evidence is sufficient to support revocation. Connor, 354 Ill. App. 3d at 384; El Flanboyan, 321 Ill. App. 3d at 75.

Although the manifest evidence standard is a high hurdle, it still does not relieve the appellate court of "its duty to examine the evidence in an impartial manner and to set aside an order unsupported in fact." Leong v. Village of Schaumburg, 194 Ill. App. 3d 60, 65 (1990); Amigo's Inn, Inc. v. License Appeal Comm'n of the City of Chicago, 354 Ill. App. 3d 959, 967 (2004) (finding that the LLCC's decision was against the manifest weight of the evidence); Lopez, 120 Ill. App. 3d at 766 (finding that the conduct at issue was "insufficient to warrant the

9

revocation of [plaintiff's liquor] license").

## Standard of Proof

There is no question that, in a liquor license revocation proceeding, the agency does not have to prove its charges beyond a reasonable doubt, as the State must in a criminal case. Connor, 354 Ill. App. 3d at 386; El Flanboyan, 321 Ill. App. 3d at 71. However, there is some question about what the correct standard of proof is.

This court has recently held, with respect to a liquor license revocation proceeding, that the agency must prove its charges by a preponderance of the evidence. Connor, 354 Ill. App. 3d at 385-86; El Flanboyan, 321 Ill. App. 3d at 75. However, this court had previously held that the correct standard of proof was proof by substantial evidence. Leong, 194 Ill. App. 3d at 70 ("[s]ubstantial evidence *** was necessary to revoke or suspend plaintiff's liquor license"). Substantial evidence has been defined as " 'more than a mere scintilla' " and as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Connor, 354 Ill. App. 3d at 385, quoting Finnerty v. Personnel Board, 303 Ill. App. 3d 1, 11 (1999).

The substantial evidence standard derives specifically from the Liquor Control Act of 1934, 235 ILCS 5/1-1 et seq. (West 2006). Section 7-9 provides that when a license appeal commission reviews a revocation decision by a commissioner, it must decide whether the commissioner's findings were "supported by substantial evidence in the light of the whole record." 235 ILCS 5/7-9 (2006).

In reaching the conclusion that a preponderance standard applied, neither Connor nor El Flanboyan discussed or distinguished our prior holding in Leong, 194 Ill. App. 3d at 70. Connor,

354 Ill. App. 3d at 385; El Flanboyan, 321 Ill. App. 3d at 75. The decisions in Connor and El Flanboyan discussed and cited cases that involved administrative decisions in general, but not specifically decisions by a liquor control commission. Connor, 354 Ill. App. 3d at 385-86, citing Finnerty, 303 Ill. App. 3d at 11 (involving a city personnel board) and S&F Corp. v. Bilandic, 62 Ill. App. 3d 193, 196 (1978) (involving revocation of licenses for a place of amusement, a food dispenser and a cigarette dealer); El Flanboyan, 321 Ill. App. 3d at 75, citing Grames v. Illinois State Police, 254 Ill. App. 3d 191, 204 (1993) (involving the Illinois State Police Merit Board). Thus, the cited cases did not involve the Liquor Control Act (235 ILCS 5/1-1 et seq. (West 2006)) or its "substantial evidence" standard. 235 ILCS 5/7-9 (West 2006).

In the case at bar, we need not resolve the question of whether preponderance or substantial evidence is the correct standard of proof, because our decision is the same under either standard. In Connor, although this court held that the preponderance standard applied, it also held that its conclusion would be the same under the substantial evidence standard as well. Connor, 354 Ill. App. 3d at 385.

In sum, we will treat the question before us as: whether the commissioner's conclusion that the agency had proved its charges (by either a preponderance or by substantial evidence) was against the manifest weight of the evidence.

Evidence of Gambling

All the charges against plaintiffs involved gambling. "[G]ambling is one of those types of crimes which the courts have recognized as a justification for the revocation of a liquor license." Leong, 194 Ill. App. 3d at 68-69 ("concern about gambling is fairly related to liquor

11

control").

In reviewing the record for evidence of gambling, we cannot consider for the truth of the matter asserted, any evidence that was not admitted for that purpose. If a liquor commissioner during a hearing admits evidence for a limited purpose, then the commission must "heed[]" its own limit. Seul's Inc. v. Illinois Liquor Control Comm'n, 240 Ill. App. 3d 828, 832 (1992). "[N]othing can be treated as evidence that is not admitted as such." Anderson v. Human Rights Comm'n, 314 Ill. App. 3d 35, 41 (2000) (discussing the findings of an administrative agency).

In the case at bar, the commissioner ruled that two statements or gestures were not being admitted for the truth of the matter asserted. Specifically, the officer testified, first, that the patron had "called out" to the bartender after the patron approached the bar; and second, that the patron had used his thumb over his shoulder to gesture toward the video machine.

Plaintiffs objected to the admission of both the calling out and the thumb gesture on the grounds that they were hearsay. "[T]he evidentiary rule against the use of hearsay has been held applicable generally to license revocation hearings before a local liquor control commissioner." Lopez, 120 Ill. App. 3d at 760-61. A statement is hearsay when it is "offered to establish the truth of the matter asserted." In re E.H., 299 Ill. App. 3d 42, 51 (1998); Leonardi v. Loyola University of Chicago, 168 Ill. 2d 83, 99 (1995). The rule against hearsay exists, in part, because the value of the statement as evidence depends on the intended meaning and credibility of the asserter whom there is no opportunity to cross-examine. In re E.H., 299 Ill. App. 3d at 51.

The commissioner overruled plaintiffs' hearsay objections and ruled that neither the

calling out nor the gesture was being admitted for the truth of the matter asserted.[2]  Thus, neither will be considered by this court for the truth of the matter asserted.

If we disregard any matters allegedly asserted by the calling out or by the gesture, then the record shows merely: (1) a patron playing a video machine; (2) the patron approaching the bar; and (3) the bartender nodding, going into a back area and then handing the patron a bill or bills of an unknown amount.  As discussed below, these acts show no evidence of gambling and are completely distinguishable from the facts in Connor, where our supreme court found sufficient evidence of gambling.  Connor, 354 Ill. App. 3d at 384.

In Connor, our supreme court found sufficient evidence of gambling where three different police officers each testified about a separate occasion when they observed  patrons playing video gambling games and then observed bartenders verifying the score on the machine before handing the patrons money.  Connor, 354 Ill. App. 3d at 382-83.

The facts in the case at bar are very different.  First, in the case at bar, the contested conduct occurred only once with only one patron.  By contrast, in Connor, our supreme court emphasized that "three officers" testified about "three separate occasions" and that the officers

---

[2]The commissioner held that the calling out and the gesture were admissible so that the officer could report what he had observed.  In re E.H., 299 Ill. App. 3d 42, 51 (1998) (a police officer's testimony about defendant's mother's pointing to a weedy lot where the officer later recovered a pistol was not admitted for the truth of the matter asserted but "offered to explain the steps in his investigation of the crime").

observed essentially the same conduct "[o]n all three occasions." Connor, 354 Ill. 2d at 384.

Repetitive conduct occurring in the same sequence or pattern is likely to share a particular

motive; by contrast, conduct occurring on only one occasion may occur for almost any reason.

Second, there was no testimony that the bartender in the case at bar verified the score on

the machine before handing the patron money.[3]  This lack of verification is significant.

Verification of a score provides circumstantial evidence that a bartender is giving money because

of the score.    Without verification, there is no causal link between the money and the score, and

hence no circumstantial evidence of gambling.  Hussung v. Patel, 369 Ill. App. 3d 924, 934

(2007) (contemporaneity does not prove causation).

Third, there was no testimony in the case at bar that, after the bartender gave the patron

money, the bartender or the patron scrolled the score on the machine down to zero.  Presumably,

if this was a gambling operation, the bar would not want to pay out twice for the same score and

thus readjusting the machine to start at zero would be important.  By contrast, in Connor, the

officers testified that on two of the occasions at issue, the officers observed that, after the patron

approached the bartender, the score on the machine was scrolled back down to zero.  Connor,

354 Ill. App. 3d at 384.

In sum, there is no circumstantial evidence that the bartender gave money based on the

---

[3]  The officer did not testify that the bartender looked toward the video machine or took

any action to verify the score on the machine.  The officer testified that when the patron called

out, the bartender was 13 feet away from him.

score when there is no testimony that she even bothered to check what the score was or to scroll the score back to zero; and the facts of our case are very different from the facts in <u>Connor</u> because in <u>Connor</u>, the conduct was repeated several times and the bartender gave money only after verifying the score. Thus, we must reverse because the commissioner's findings of gambling are against the manifest weight of the evidence.

We want to address several remarks made in the dissent in order to eliminate any possible confusion and to delineate clearly the point of disagreement. First, the dissent writes: "The majority appears to have adopted Boom Town's contention that the observed conduct was excludable as hearsay." The exact opposite is true. For the record, we accept the commissioner's ruling that the calling out and the gesture were <u>not</u> admitted for the truth of the matter asserted, that they were thus <u>not</u> hearsay and that for this reason, they were <u>not</u> excluded and properly so.

Second, the dissent writes that neither plaintiffs nor defendants claimed that the calling out or the gesture communicated anything. Then, in addition to no error, there can also be no harm in disregarding any possibly assertive quality that these two acts may have possessed.

Third, the dissent disagrees that the repetition of the acts in <u>Connor</u> had any significance. Even if that were true, that was only one of several ways in which the facts of <u>Connor</u> were very different from the facts at hand.

CONCLUSION

For the foregoing reasons, the decisions of the LLCC and the circuit court are reversed.

Reversed.

WOLFSON, J., concurs.

GARCIA, J., dissents.

No. 1-07-0239

JUSTICE GARCIA, dissenting.

I question the position taken by the majority that evidence the patron "called out" to the bartender and that he used his thumb over his shoulder as he approached the bar in the direction of the poker machine can somehow be "disregard[ed]." Slip op. at __. You can no more "disregard" those observations of the investigating officer then you can "disregard" the remainder of his testimony describing what he observed. For the reasons stated below, I submit all of the observed conduct testified to by Officer Sobczyk was properly before the Commissioner. And the Commissioner was free to draw reasonable inferences from the officer's observations to support its findings.

The majority appears to have adopted Boom Town's contention that the observed conduct was excludable as hearsay. However, it is a fundamental rule of evidence that observed conduct is not hearsay unless it is offered as "assertive conduct." See People v. Barger, 251 Ill. App. 3d 448, 464, 624 N.E.2d 405 (1993) (gesture, nodding, or pointing, may " 'clearly be the equivalent of an assertive statement' " where it is made " 'for the purpose of deliberate communication' "), quoting M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.2, at 572 (5th ed. 1990).

While the majority intimates otherwise, the City of Chicago

**17**

does not argue the observed conduct conveyed anything more than what was observed; the City of Chicago does not characterize the patron's conduct as "assertive" to support the decision by the LLCC, affirmed by the LAC, which the trial court in turn affirmed. The evidence presented of the patron's conduct was quintessentially nonhearsay. In re E.H., 299 Ill. App. 3d 42, 51, 700 N.E.2d 1044 (1998), quoting Simms, 143 Ill. 2d at 174 (" 'testimony describing the progress of the investigation is admissible even if it suggests that a nontestifying witness implicated the defendant' ").

Also of note, Boom Town identifies no "deliberative communication" the observed conduct conveyed that was somehow improperly used against it. The fact is the patron's conduct was not offered for whatever truth Boom Town believes the conduct may have asserted but rather was offered as "one link in a chain of investigative evidence" establishing gambling. People v. Stewart, 105 Ill. 2d 22, 57-59, 473 N.E.2d 840 (1984) (laundry receipt not hearsay as offered only to link the defendant to hotel room). After the patron played a video poker machine, he and the bartender had an exchange, and the bartender handed the patron a sum of money. The trial court found this incontrovertible evidence, circumstantial as it is, along with the reasonable inferences drawn therefrom, sufficient to affirm

**18**

the administrative decision and I agree.

While admittedly more than one reasonable inference may be drawn from the observed conduct, the Commissioner appears to have drawn the inference that the patron signaled the bartender he had finished his poker play and he was entitled to his winnings based on the credits Officer Sobczyk observed on the poker machine. There was no testimony from the bartender that she and the patron returned to the poker machine as one might expect to verify a problem did occur. That there was evidence that tended to support Boom Town's claim that the money exchange was nothing more than a "refund" suggests nothing more than a reweighing of the evidence. Slip op. at ___. The bartender testified she gave a patron by the name of "John" a $5 refund. However, this conflicted with the testimony of the president of Boom Town that there were two $10 refunds handed out on March 4. The repair company employee's testimony contributed to the confusing nature of Boom Town's case. He testified that the seized machine had a problem: the "dollar bill intake was sticking." Slip op. at ___. How a $5 refund is converted into a $10 refund, either refund or both refunds based on the use of a machine that accepted $1 bills, was never explained. It is not unreasonable for the Commissioner to have disregarded this testimony. Of course, it is of no moment that I, like the majority, might "have ruled

**19**

differently in the first instance."  Slip op. at __.

Reasonably, I submit, the Commissioner found circumstantial evidence of gambling from these established facts and from the inferences the Commissioner was free to draw.  Circumstantial evidence is not objectionable hearsay.  Stewart, 105 Ill. 2d at 58, citing 6 J. Wigmore Evidence §1788 (J. Chadbourn rev. ed. 1976).

Finally, I find unpersuasive the manner in which the majority distinguishes Connor.  Considering Connor and this case, I understand the majority to conclude that conduct observed once may be considered meaningless such that it can be disregarded, but repeat that conduct and it gains meaning.  However, the only way repetitive conduct can suggest a "particular motive" is when the conduct performed once has that same "particular motive."  Slip op. at __.  Motive does not materialize by repetition alone. If a "particular motive" cannot reasonably be ascribed to conduct observed once, I fail to see how there is any "motive" to share upon observing the conduct repeated.

Because we owe deference to the Commissioner's factual findings, I would sustain the gambling charges, as the trial court did.  Connor, 354 Ill. App. 3d at 384 ("A decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident").  I would also sustain revocation

**20**

as an appropriate sanction. <u>Daley v. El Flanboyan Corp.</u>, 321 Ill. App. 3d 68, 77, 746 N.E.2d 854 (2001) ("The violation of any statute, ordinance or regulation related to the control of liquor generally constitutes cause for the revocation of a liquor license"; court may also consider establishment's prior violations).

I therefore dissent.

No. 1-07-0239

# REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT
## (Front Sheet to be attached to each Opinion)

| | |
|---|---|
| **Please use the following form:** | |
| | BOOM TOWN SALOON, INC., Licensee, and EUGENE PERRY, President, |
| | Plaintiffs-Appellants, |
| | v. |
| | THE CITY OF CHICAGO, a Municipal Corporation, RICHARD M. DALEY, as both Local Liquor License Commissioner and Mayor, SCOTT BRUNER, Director of the Mayor's License Commission, ROBERT NOLAN, Hearing Officer for the Mayor's License Commission, the MAYOR'S LICENSE COMMISSION, THE LICENSE APPEAL COMMISSION OF THE CITY OF CHICAGO, ANTHONY CALABRESE, IRVING KOPPEL, DON ADAMS and PHILIP J. CLINE, Chicago Police Superintendent, |
| | Defendants-Appellees. |
| **Complete TITLE of Case.** | |

| | |
|---|---|
| **Docket No.** | No. 1-07-0239 |
| **COURT** | Appellate Court of Illinois First District, First Division |
| **Opinion Filed** | JULY 14, 2008 (Month, Day and Year) |
| **JUSTICES** | JUSTICE ROBERT E. GORDON delivered the opinion of the court. |
| | WOLFSON, J., concurs. GARCIA, J., dissents. |
| **APPEAL from the Circuit Court of Cook County; the Hon:_____ Judge Presiding** | Lower Court and Trial Judge(s) in form indicated in margin: Appeal from the Circuit Court of Cook County. Honorable Mary Anne Mason, Judge Presiding. |
| **For APPELLANTS John Doe of Chicago. For APPELLEES, Smith and Smith, of Chicago. Brown,** | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented. |
| | --------------------------------------------------------------------------------------- |
| | Touhy & Touhy, Ltd. Chicago, Illinois  60601 Attorneys for Appellants Attn: Timothy J. Touhy |

of Counsel.                    ]                    OF COUNSEL




                               ]
Also add atty.                 ]          Corporation Counsel of the City of Chicago - Mara S. Georges
for third party                ]          Chicago, Illinois   60602
appellants                     ]          Attorneys for Appellees
or appellees.                  ]          Attn: Benna Ruth Solomon,  Myriam Zreczny Kasper
                               ]               and Sara K. Kornstra
                               ]               OF COUNSEL
                               ]