**Jeffrey JUCHA, d/b/a 4 Anchors Tattoo, Plaintiff,**

v.

**CITY OF NORTH CHICAGO, Defendant.**

No. 13 C 8629

United States District Court, N.D. Illinois, Eastern Division.

Signed August 6, 2014

822

ing. Further, the Complaint sufficiently alleges that the City violated Jucha's and his customers' First Amendment rights without providing due process of law.

## BACKGROUND [1]

David G. Sigale, Law Firm of David G. Sigale, P.C., Glen Ellyn, IL, for Plaintiff.

Julie M. Koerner, O'Halloran Kosoff Geitner & Cook LLC, Jane Marie May, O'Halloran, Kosoff, Helander & Geitner, P.C., Northbrook, IL, for Defendant.

## OPINION AND ORDER

Sara L. Ellis, United States District Judge

Plaintiff Jeffrey Jucha, a tattoo artist, sought to open his own tattoo parlor in the City of North Chicago, Illinois (the "City"). After Jucha failed to receive a permit from the City allowing him to open his tattoo parlor, he filed suit alleging that the City violated his and his customers' constitutional rights and seeking declaratory and injunctive relief pursuant to the First Amendment of the United States Constitution and the Fourteenth Amendment's Due Process Clause and Equal Protection Clause. Additionally, Jucha brings parallel claims under the Illinois Constitution. Now before the Court is the City's motion to dismiss the Complaint for failure to state a claim [11]. Because Jucha has not adequately pleaded the elements, the Court dismisses Jucha's federal and state law equal protection claims. But the Court denies the motion with regard to all other claims, because the Court finds that the First Amendment protects tattoos, the act of tattooing, and the business of tattoo-

Jucha owns and operates 4 Aces Tattoo Parlor and Body Piercing in Franklin Park, Illinois. Jucha sought to open a second studio, known as 4 Anchors Tattoo ("4 Anchors"), at 2314 Green Bay Road in North Chicago, Illinois. If allowed to open 4 Anchors, Jucha would "disseminate expressive body art in the form of the tattoos and body piercings it sells and applies to its customers." Doc. 1 ¶ 4. Jucha has obtained a commitment from the owner of the property to provide Jucha with a lease if he receives necessary permitting from the City.

Under the City's zoning ordinance, body art establishments are presumptively not allowed. However, one such establishment currently operates within the City and has been allowed to remain open under a grandfather provision. In order to obtain permission to open 4 Anchors, Jucha sought a Special Use Permit from the City Council. On October 21, 2013, the City Council indefinitely tabled Jucha's application for a Special Use Permit, effectively denying him the opportunity to open 4 Anchors within the city limits. Jucha learned that his application failed because 4 Anchors was "not the kind of business" the City Council wanted in the City. Doc. 1 ¶ 9. The City Council also considered whether to amend the Zoning Ordinance to allow body art establishments, but this measure failed by a 5–2 vote. There was no public hearing with regard to Jucha's request for a Special Use Permit. The

1. The facts in the background section are taken from the Complaint and are presumed true for the purpose of resolving the City's motion to dismiss. *See Virnich v. Vorwald,* 664 F.3d 206, 212 (7th Cir.2011).

City Council did not hear any evidence or testimony with regard to the negative impact that might result from the presence of 4 Anchors in the City.

## LEGAL STANDARD

■ A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed.R.Civ.P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir.2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

## ANALYSIS

### I. Standing

■ Although the City does not challenge Jucha's standing to sue on behalf of himself, it argues that Jucha lacks standing to sue on behalf of his potential customers. To establish standing, a plaintiff must show (1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "Ordinarily,

of course, people have no standing to assert the rights of third parties." *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 953 (7th Cir.2000). "In the context of the First Amendment, however, 'courts have taken a more liberal approach (under the prudential branch of the standing doctrines) to the ability of one party to assert the rights of another party.'" *Covenant Media of Ill., L.L.C. v. City of Des Plaines, Ill.*, 391 F.Supp.2d 682, 687 (N.D.Ill.2005) (quoting *United States v. Holm*, 326 F.3d 872, 875 (7th Cir.2003)). Parties challenging a statute on First Amendment grounds may represent the interests of third parties "whose protected expression is prohibited or substantially burdened by the regulation." *Schultz v. City of Cumberland*, 228 F.3d 831, 848 (7th Cir.2000).

■■ Additionally, businesses may represent their customers' constitutional rights. *See Craig v. Boren*, 429 U.S. 190, 195, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (beer vendors may challenge an alcohol regulation on equal protection grounds on behalf of their customers); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 536, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (holding that a school may assert the rights of its students' parents, and gathering cases granting injunctions to businesses on behalf of customers); *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir.2011) (owners of a firing range are allowed to sue on behalf of their customers in a Second Amendment challenge to a zoning ordinance). Therefore, the Court finds that Jucha has standing to sue the City on behalf of his customers.

### II. First Amendment Claim

In Count I, Jucha alleges that the City violated his and his customers' free speech rights by denying his request to open a

tattoo parlor within the City's limits. The City moves to dismiss on the basis that the First Amendment does not protect an individual's right to apply tattoos. The question now before the Court is whether the First Amendment protects tattoos, the act of tattooing, and the business of tattooing. The Court finds that it does.

 There is no doubt that the First Amendment protects artistic expression. *Nat'l Endowment for the Arts v. Finley,* 524 U.S. 569, 602, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) ("It goes without saying that artistic expression lies within this First Amendment protection."); *Hurley v. Irish–Am. Gay, Lesbian & Bisexual Grp. of Boston,* 515 U.S. 557, 569, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (noting that the "painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll" are "unquestionably shielded"). It is also clear that the First Amendment does not protect "expressive conduct" to the same extent that it protects the written or spoken word. *See Texas v. Johnson,* 491 U.S. 397, 406, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) ("The government generally has a freer hand in restricting expressive conduct than it has in restricting the written or spoken word."); *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (rejecting "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea"). But the Supreme Court has repeatedly made clear that the First Amendment protects various media of expression, including symbols and other nonverbal expression. *Hurley,* 515 U.S. at 569, 115 S.Ct. 2338 ("[T]he Constitution looks beyond written or spoken words as mediums of expression."); *W. Va. State Bd. of Educ. v. Barnette,* 319 U.S. 624, 632, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943) ("Symbolism is a primitive but effective way of communicating ideas.").

 The Supreme Court reinforced this point in *Brown v. Entertainment Merchants Association,* —— U.S. ——, 131 S.Ct. 2729, 2737, 180 L.Ed.2d 708 (2011). In *Brown,* the video game industry brought a First Amendment challenge against a California law restricting the sale, rental, and labeling of violent video games. *Id.* at 2732–33. The Supreme Court began its analysis by noting that the state of California "correctly acknowledges that video games qualify for First Amendment protection." *Id.* at 2733. The Supreme Court went on to make clear that the First Amendment is not limited to traditionally refined works that one might find in a museum or library, but that "[c]rudely violent video games, tawdry TV shows, and cheap novels and magazines are no less forms of speech than The Divine Comedy, and restrictions upon them must survive strict scrutiny." *Id.* at 2737 n. 4; *see also Winters v. New York,* 333 U.S. 507, 510, 68 S.Ct. 665, 92 L.Ed. 840 (1948) ("Though we can see nothing of any possible value to society in these magazines, they are as much entitled to the protection of free speech as the best of literature."). *Brown* held that "[l]ike the protected books, plays, and movies that preceded them, video games communicate ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music) and through features distinctive to the medium (such as the player's interaction with the virtual world)." *Brown,* 131 S.Ct. at 2733. Finally, *Brown* reiterated that " 'the basic principles of freedom of speech and the press, like the First Amendment's command, do not vary' when a new and different medium for communication appears." *Id.* (quoting *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 503, 72 S.Ct. 777, 96

L.Ed. 1098 (1952)). Neither the Seventh Circuit nor the Supreme Court has addressed the question of whether the First Amendment protects tattoos, but *Brown* suggests that the Supreme Court would interpret the First Amendment to also protect tattoos, as they are "merely a different medium for communication" that may include literary or artistic references and contain "features distinctive to the medium," such as the tattoo's permanence, its incorporation into the bearer's body, and the creative collaboration between the tattoo artist and the bearer. *Brown*, 131 S.Ct. at 2733.

■ The Ninth Circuit and the Arizona Supreme Court have recently issued persuasive opinions that the First Amendment protects tattoos and tattoo parlors. In *Anderson v. City of Hermosa Beach*, the plaintiff challenged a municipal code that "effectively bans" tattoo parlors. 621 F.3d 1051, 1055 (9th Cir.2010). The Ninth Circuit struck down the ordinance, reversed the district court's grant of summary judgment in favor of the city, and remanded the case with instructions to grant summary judgment to the plaintiff. *Id.* at 1068. The *Anderson* court held that tattoos, the act of tattooing, and the business of tattooing are purely expressive and are therefore protected by the First Amendment. *Id.* The court noted that "tattoos are generally composed of words, realistic or abstract images, or a combination of these, all of which are forms of pure expression that are entitled to full First Amendment protection." *Id.* at 1061. The Court agrees.

In *Anderson*, the Ninth Circuit rejected the city's analogies to *Kovacs v. Cooper*, 336 U.S. 77, 87, 69 S.Ct. 448, 93 L.Ed. 513 (1949), "the only case in which the Supreme Court has upheld a total ban on a medium of communication." *Anderson*, 621 F.3d at 1067. *Kovacs* upheld an ordinance banning the use of sound *trucks* (vehicles with attached sound amplifiers) on public streets. *Kovacs*, 336 U.S. at 89, 69 S.Ct. 448. The decision in *Kovacs* was largely based on the Supreme Court's finding that sound trucks would cause dangerous distractions on the city's streets and would upset the city's "quiet tranquility." *Id.* at 87, 69 S.Ct. 448. The *Kovacs* Court held that the efficiencies gained by broadcasting a message via a sound truck were "not enough to call forth constitutional protection." *Id.* at 88–89, 69 S.Ct. 448. *Anderson* distinguished *Kovacs*, noting that "a tattoo is not merely 'a more effective means' of communicating a message; rather, the tattoo 'often carries a message quite *distinct* from other media.'" *Anderson*, 621 F.3d at 1067. The Ninth Circuit continued: "[i]n light of the long line of cases in which the Supreme Court has invalidated total bans on a medium of communication, it cannot be true that any medium of communication may be banned based on the reasoning that it is merely a 'more effective' means of communicating a message." *Id.*

Similarly, in *Coleman v. City of Mesa*, the Supreme Court of Arizona began its analysis by finding that it "seems incontrovertible" that tattoos are "pure speech" and therefore fully protected by the First Amendment. 230 Ariz. 352, 284 P.3d 863 (2012). In *Coleman*, the city council denied the plaintiff's application for a permit to open a tattoo parlor and the trial court dismissed the plaintiff's suit, but the Supreme Court of Arizona reversed the dismissal. *Id.* at 866. Like the Ninth Circuit, the *Coleman* court held that the First Amendment protects the act of tattooing just as much as it protects the tattoo itself. *Id.* at 870 ("[T]he art of writing is no less protected than the book it produces; nor is painting less an act of free speech than the painting that results."). The court went

on to explain that a tattoo may express a message on behalf of both the tattoo artist and the recipient: "[a] tattoo involves expressive elements beyond those present in 'a penand-ink' drawing, inasmuch as a tattoo reflects not only the work of the tattoo artist but also the self-expression of the person displaying the tattoo's relatively permanent image." *Id.* The Court finds *Anderson* and *Coleman* to be well-reasoned and in line with the Supreme Court's and the Seventh Circuit's First Amendment jurisprudence.

Calling the *Anderson* and *Coleman* analysis "simply wrong," Doc. 17 at 6, the City relies on *Hold Fast Tattoo, LLC v. City of North Chicago,* 580 F.Supp.2d 656 (N.D.Ill.2008), a 2008 case from this district. In *Hold Fast,* as here, the plaintiff challenged the City's de facto ban on tattoo parlors. *Id.* at 658. However, the *Hold Fast* court did not discuss whether tattoos may be protected by the First Amendment; rather, the court considered only whether the act of tattooing was sufficiently expressive, concluding that "[t]he act of tattooing is one step removed from actual expressive conduct," and therefore did not warrant First Amendment protection. *Id.* at 660.

The *Hold Fast* court applied the analysis laid out in *Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974). The *Spence* test provides that conduct is sufficiently communicative to warrant First Amendment protection if the actor demonstrates (1) "an intent to convey a particularized message" and (2) a "[great] likelihood ... that the message would be understood by those who viewed it." *Id.* at 411, 94 S.Ct. 2727. Analyzing the issue through this lens of conduct, the *Hold Fast* court held that tattooing is not protected by the First Amendment "because the act itself is not intended to convey a particularized message" and because

"there is no 'message' to be understood by viewers." *Hold Fast,* 580 F.Supp.2d at 660. After finding that no fundamental right was at issue, the court dismissed the complaint on the basis that the ordinance was rationally related to a legitimate government interest. *Id.*

The Court respectfully disagrees. The *Spence* analysis is "reserved for processes that do *not* produce pure expression but rather produce symbolic conduct that, 'on its face, does not necessarily convey a message.'" *Anderson,* 621 F.3d at 1061 (quoting *Cohen v. California,* 403 U.S. 15, 18, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971)). The *Spence* test is helpful when analyzing conduct like burning a flag, *Johnson,* 491 U.S. at 403, 109 S.Ct. 2533, burning a draft card, *O'Brien,* 391 U.S. at 376, 88 S.Ct. 1673, or wearing a black arm band, *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), because all of those activities may be done for reasons that have nothing to do with self-expression. *Anderson,* 621 F.3d at 1061. When a case hinges on such conduct, *Spence* assists the Court in determining whether the conduct is sufficiently expressive. But where the case involves purely expressive works of art or other expressive media, it is not appropriate to apply *Spence.* A tattoo is an image or text rendered on human skin. Rather than analyze tattoos and tattooing as conduct, the Court finds that they are more akin to paintings, drawings, and writings fixed in other media that are undeniably protected. *Kaplan v. California,* 413 U.S. 115, 119, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973) (noting that "pictures, films, paintings, drawings, and engravings" are protected by the First Amendment).

The analysis begins with determining whether tattoos themselves are protected by the First Amendment. If tattoos are

protected, the Court must then determine whether the act of tattooing and business of tattooing are protected.

■ It is clear to the Court that the First Amendment protects tattoos as speech in the same way that it protects paintings, drawings, or video games. *Anderson*, 621 F.3d at 1060 ("There appears to be little dispute that the tattoo itself is pure First Amendment 'speech.' "); *Coleman*, 284 P.3d at 870 (noting that it "seems incontrovertible" that a tattoo is "pure speech"). After all, tattoos are words, symbols, or pictures rendered on a person's body, rather than a canvas or paper. *Anderson*, 621 F.3d at 1062; *see also Kaplan*, 413 U.S. at 119–120, 93 S.Ct. 2680 ("As with pictures, films, paintings, drawings, and engravings, both oral utterance and the printed word have First Amendment protection until they collide with the long-settled position of this Court that obscenity is not protected by the Constitution.").

■ The City disagrees, analogizing tattoos to permanent makeup, jewelry, haircuts, or earrings. The Court finds all of these comparisons unpersuasive. A tattoo is a medium of expression that implicates both the artist's and the recipient's speech rights, because it allows both to express themselves artistically and/or socially. *Anderson*, 621 F.3d at 1062 (noting that "both the tattooist and the person receiving the tattoo contribute to the creative process"). Moreover, unlike jewelry or a haircut, the message contained within a tattoo is so important to the bearer that she chooses to permanently imprint it on her body. *Id.* at 1067 ("A tattoo suggests that the bearer of the tattoo is highly committed to the message he is displaying: by permanently engrafting a phrase or image onto his skin, the bearer of the tattoo suggests that the phrase or image is so important to him that he has chosen to display the phrase or image every day for the remainder of his life."). And regardless of a tattoo's content, merely having a tattoo can express a message to one's fellow members of society. .

■ To support its argument, the City cites *Stephenson v. Davenport Community School District*, 110 F.3d 1303 (8th Cir. 1997), an Eighth Circuit decision upholding a school's ban on students displaying gang related tattoos. The Court finds this case unpersuasive for two reasons. First, a student's free speech rights at school are not as robust as an individual's rights outside the school setting. *Morse v. Frederick*, 551 U.S. 393, 401, 127 S.Ct. 2618, 2624, 168 L.Ed.2d 290 (2007) (citing *Porter v. Ascension Parish School Bd.*, 393 F.3d 608, 615 (5th Cir.2004)). Tellingly, the City does not cite any cases outside the school context for the proposition that tattoos are not protected by the First Amendment. Additionally, *Stephenson* analyzed the question via *Spence*, seeking to determine whether the plaintiff's *conduct*, apparently the act of wearing a tattoo, was sufficiently expressive to warrant First Amendment protection. *Stephenson*, 110 F.3d at 1307 n. 4. As explained above, the Court disagrees with the method of analyzing tattoos as conduct.

■ The next question is whether the First Amendment protects the act of tattooing. The Court finds that it would be irrational to conclude that the act of tattooing is any less protected than tattoos themselves. Just as it would make no sense for a court to hold that paintings are protected by the First Amendment, but that the act of painting is not protected, the Court refuses to distinguish between the · tattoo and the act of tattooing. *Anderson*, 621 F.3d at 1062 ("[A]s with writing or painting, the tattooing process is inextricably intertwined with the purely

expressive product (the tattoo), and is itself entitled to full First Amendment protection."). The Seventh Circuit has expressly agreed with this principle in a different context, holding that "[t]he act of *making* an audio or audiovisual recording is necessarily within the First Amendment's guarantee of speech and press as a corollary of the right to disseminate the resulting recording." *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir.2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 651, 184 L.Ed.2d 459 (2012); *see also Minneapolis Star & Tribune Co. v. Minn. Com'r of Revenue*, 460 U.S. 575, 582, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983) (overturning a tax on ink and paper as a burden on the freedom of the press).

 Likewise, the business of tattooing is protected by the First Amendment to the same extent as the tattoo itself. Whatever the medium of expression, it is clear that the First Amendment's protection does not disappear when the speaker receives money in exchange for his speech. *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) ("It is well settled that a speaker's rights are not lost merely because compensation is received; a speaker is no less a speaker because he or she is paid to speak."); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 756 n. 5, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) ("[T]he degree of First Amendment protection is not diminished merely because the newspaper or speech is sold rather than given away."); *Ayres v. City of Chicago*, 125 F.3d 1010, 1014 (7th Cir.1997) (items "do not lose their protection by being sold rather than given

away"); *Bery v. City of New York*, 97 F.3d 689, 695 (2d. Cir.1996) ("The sale of protected materials is also protected."). *Anderson* and *Coleman* reach this conclusion in the context of tattoos. *Anderson,* 621 F.3d at 1062–63 ("[T]he fact that the City's ban relates to tattooing *businesses* rather than the tattooing process itself does not affect whether the activity regulated is protected by the First Amendment."); *Coleman,* 284 P.3d at 871 ("Determining that tattooing is protected speech also implies that the business of tattooing is constitutionally protected.").

 Of course, finding that tattoos and tattooing are protected by the First Amendment does not predetermine that Jucha is entitled to an injunction. Instead, the City will have the opportunity to demonstrate that, despite the protected status afforded to tattooing, the ordinance is nonetheless constitutional. That inquiry will depend on whether the City's actions constitute a reasonable time, place, and manner restriction on speech, *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989), or whether the City can satisfy the four prong test outlined in *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).[2] *See Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1057 (7th Cir.2004) (noting that "the *O'Brien* analysis and the *Ward* time, place and manner analysis are really just variations on the same principle"). Additionally, the finding that tattoos are protected by the First Amendment does not mean that cities and states cannot regulate tattoo parlors with "generally applicable laws,

**2.** *O'Brien* held that, when restricting protected speech, "a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated

to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673.

such as taxes, health regulations, or nuisance ordinances." *Coleman*, 284 P.3d at 871. But these inquiries are not relevant to the motion to dismiss now before the Court. Because the Court finds that the First Amendment protects tattoos, the act of tattooing, and the business of tattooing, the Court denies the City's motion to dismiss Jucha's First Amendment claim.

## III. Due Process Claim

While not set out as its own count, Jucha also alleges that the City denied him due process by arbitrarily tabling his Special Use Application without providing him with a sufficient opportunity to be heard. Doc. 1 ¶¶ 12–14. To state a valid procedural due process claim, a plaintiff must allege that he was deprived of a protected liberty or property interest without adequate process. *Brown v. City of Mich. City, Ind.*, 462 F.3d 720, 728 (7th Cir.2006). The Court determined above that Jucha has a legitimate First Amendment liberty interest in tattooing. The question before the Court is whether Jucha sufficiently alleges that he was deprived of that interest without adequate process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir.1996). Jucha claims that the City Council's decision to deny him a Special Use Permit was "arbitrary," Doc. 1 ¶¶ 25, 27, and asserts that the City was motivated by an apparent prejudice against tattoo parlors and their clientele. Moreover, Jucha alleges that the City did not hold a public hearing with regard to his request and that the City did not hear testimony, consider data, or assess any other form of evidence prior to rendering its decision. Taking these allegations as true, the Court finds that the Complaint states a procedural due process claim against the City by plausibly alleging that Jucha did not receive a meaningful hearing.

Jucha may not, however, bring a claim for deprivation of substantive due process. The Supreme Court has cautioned that when a plaintiff raises a claim pursuant to a liberty interest enumerated in the Bill of Rights, courts should analyze the claim as a potential violation of the specific right, not as a deprivation of substantive due process. *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))). Therefore, the Court analyzes Jucha's claim as a violation of his First Amendment rights, rather than as a deprivation of substantive due process.

## IV. Equal Protection Claim

Jucha also brings a class of one equal protection claim against the City, alleging that he was treated differently than an existing tattoo parlor that has been allowed to operate in the City for "grandfathering reasons." Doc. 1 ¶ 25. In order to state a claim, Jucha must allege that he was intentionally treated differently from a similarly situated individual and that there is no rational basis for the differential treatment. *Fares Pawn, LLC v. Ind. Dep't of Fin. Inst.*, 755 F.3d 839, 844–45 (7th Cir.2014); *D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686 (7th Cir.2013), *cert. denied*, —— U.S. ——,134 S.Ct. 1308, 188 L.Ed.2d 304

(2014).[3] Because he has not adequately pleaded the elements, the Court dismisses Jucha's equal protection claim.

■■■■ First, Jucha has not plausibly alleged that he is similarly situated to his comparator, the tattoo parlor that has been allowed to operate as a result of its grandfathered status. "In order to be considered 'similarly situated,' comparators must be '*prima facie* identical in all relevant respects,' or 'directly comparable to [plaintiff] in all material respects.'" *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir.2005) (alteration in original) (citations omitted). By pointing out that the comparator operates under a grandfather provision, the Complaint makes clear that the comparator is not similarly situated to 4 Anchors. *See Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir.2002) (holding, in a challenge to a zoning decision, that the plaintiff was not similarly situated to others who received different treatment for different reasons). While Jucha bears no burden of proof at the motion to dismiss stage, he must plausibly allege the elements of each count in order to withstand a motion to dismiss. *See Scherr v. City of Chicago*, No. 12 C 5913, 2013 WL 1446304, at *5 (N.D.Ill. Apr. 9, 2013) (dismissing an equal protection claim for failing to plausibly allege the requisite elements), *aff'd*, 757 F.3d 593 (7th Cir. 2014).

■■■ Moreover, Jucha fails to plausibly allege that the City lacked a rational basis in refusing to grant him a Special Use Permit. This question will hinge not on whether the City actually employed a rational basis, but whether the City's decision could be supported by a rational basis. *Fares Pawn*, 755 F.3d at 844–45. ("If we can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no."). "In general, zoning ordinances imposing restrictions on use and occupation of private land ... satisfy the rational basis test." *Maum Meditation House of Truth v. Lake County, Ill.*, No. 13–CV–3794, 55 F.Supp.3d 1081, 1088–89, 2014 WL 3514989, at *4 (N.D.Ill. July 16, 2014) (dismissing a class of one equal protection claim). Accepting the allegations in the Complaint as true, Jucha does not allege sufficient facts to allow the Court to conclude that the City lacked a rational basis for refusing to grant his Special Use Permit. Therefore, the Court grants the City's motion to dismiss Count II.

## V. State Law Claims

Finally, Jucha reasserts his previous allegations, contending the City's actions violate §§ 2 and 4 of Article I of the Illinois Constitution. These sections parallel the Fourteenth and First Amendments of the United States Constitution, respectively. The Court's analysis of these provisions therefore parallels the federal constitutional analysis. *Ill. Bell Tel. Co. v. Vill. of Itasca, Ill.*, 503 F.Supp.2d 928, 947 n. 11 (N.D.Ill.2007) ("[B]ecause the [Illinois Constitution] analysis at this point would be similar to that under the First Amendment of the United States Constitution, and neither party addressed the Illinois claim separately, we decline to address it in separate analysis"); *Rogers v. Arbisi*, No. 93 C 20237, 1996 WL 89346, at *5 (N.D.Ill. Feb.

3. Although the Seventh Circuit has not made clear whether illegitimate animus is required in equal protection claims, that issue does not affect the Court's decision here. *See Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir.2010) ("Some of our cases have also required proof that the state action was motivated by illegitimate animus against the plaintiff, while others have treated illegitimate animus as an alternative basis for class-of-one liability.").

28, 1996) ("Because Rogers has not established any violations of the U.S. Constitution, his parallel claims under the Illinois Constitution must fail."). Therefore, the Court denies the motion to dismiss with regard to the free speech claim premised on Article I, § 4 of the Illinois Constitution and the due process claim premised on Article I, § 2 of the Illinois Constitution. The Court grants the motion to dismiss with regard to the equal protection claim pursuant to Article I, § 2 of the Illinois Constitution.

■ Jucha also alleges that the City's refusal to allow him to open a tattoo parlor oversteps the City's police powers under Article VII, § 7 of the Illinois Constitution, which states that "municipalities which are not home rule units shall have only powers granted to them by law," as well as certain enumerated powers. Ill. Const. Art. VII, § 7. "The power of local governments to zone and control land use is undoubtedly broad and its proper exercise is an essential aspect of achieving a satisfactory quality of life in both urban and rural communities. But the zoning power is not infinite and unchallengeable; it 'must be exercised within constitutional limits.'" *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981) (quoting *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 514, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (Stevens, J., concurring)). Accordingly, the viability of Jucha's police power claim depends on the strength of his related constitutional arguments. *Schad*, 452 U.S. at 68, 101 S.Ct. 2176; *see also Annex Books, Inc. v. City of Indianapolis, Ind.*, 581 F.3d 460, 462 (7th Cir.2009) (stating, in response to a First Amendment challenge to a zoning ordinance, "to prevail, the City needs evidence that the restrictions actually have public benefits great enough to justify any curtailment of speech"). Because the Com-

plaint contains viable First Amendment and procedural due process claims, Jucha has sufficiently alleged that the City failed to confine its zoning authority to the prescribed constitutional limits.

## CONCLUSION

For the reasons stated above, the City's motion to dismiss [11] is granted in part and denied in part. Jucha's federal and state law equal protection claims are dismissed without prejudice. The remainder of the motion is denied.