2015 IL App (1st) 133454

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

SECOND DIVISION
May 19, 2015

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES (AFSCME), COUNCIL 31, | ) ) ) | Petition for Review of a Decision and Order of the Illinois Labor Relations Board, State Panel. |
| Petitioner, | ) ) ) | |
| (Glen Bell, Lisa Krebs, Carol Gibbs, David Johnson, and Maureen Haugh-Stover, | ) ) ) | Nos. S-DE-14-005, S-DE-14-008 |
| Individual Objectors). | ) ) | S-DE-14-009, S-DE-14-010, S-DE-14-017, S-DE-14-021, |
| v. | ) ) | S-DE-14-026, S-DE-14-028, S-DE-14-030, S-DE-14-031, |
| THE STATE OF ILLINOIS, THE DEPARTMENT OF CENTRAL MANAGEMENT SERVICES, and THE ILLINOIS LABOR RELATIONS BOARD, STATE PANEL, | ) ) ) ) | S-DE-14-032, S-DE-14-034, S-DE-14-039, S-DE-14-040, S-DE-14-041, S-DE-14-042, S-DE-14-043, S-DE-14-044, |
| Respondents. | ) ) | and S-DE-14-045 |

PRESIDING JUSTICE SIMON delivered the judgment of the court, with opinion.
Justices Neville and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    This case deals with a statute aimed at increasing efficiency in the state government by

reducing collective bargaining unit membership among management-level state employees.   The

goal of the statute is to ensure that certain employees' undivided loyalty will be to the executive branch, as collective bargaining unit membership inhibits their ability to manage subordinates with whom they share common interests as collective bargaining members.   To further that stated objective, the General Assembly passed a statute that gave the Governor the authority to "designate" up to 3,580 state employment positions.   "Designate" in this context means that the Governor can file a petition and, so long as the employment position qualifies for exemption under certain statutory parameters, the employee occupying that position becomes excluded from his or her collective bargaining unit.

¶ 2      Under the authority of that statute, the Governor filed petitions identifying the positions occupied by the individual objectors in these cases (individuals) for exclusion from their collective bargaining units.   The Governor's designations were approved by the Illinois Labor Relations Board, thereby excluding the individuals from their collective bargaining units.   AFSCME, on behalf of the designated employees, filed this appeal arguing that the statute is unconstitutional. We reject AFSCME's arguments, and, therefore, we affirm the decisions of the Illinois Labor Relations Board.

¶ 3                                    BACKGROUND

¶ 4      In 2011, the Illinois General Assembly began to debate measures that would remove state workers in management positions from their collective bargaining units with the goal that those employees would act as managers and would not act with any allegiance to their fellow collective bargaining unit members.   The stated objective of these legislative efforts was to increase efficiency in the state government.   In 2013, the General Assembly passed a public act that narrowed the class of those that could be considered "public employees" and set up a process by

which the Governor could designate up to 3,580 positions as excluded from collective bargaining units. Months later, the General Assembly passed another public act that exempted certain specific state employment positions from designation—positions that may have otherwise been considered to have fallen within the ambit of those subject to designation under the initial public act. The public acts were approved and signed into law by the Governor on April 5, 2013, and together they became section 6.1 of the Illinois Public Labor Relations Act (Act) (5 ILCS 315/6.1 (West Supp. 2013)) .

¶ 5    Beginning in August 2013, consistent with the procedures set forth in the Act, the Department of Central Management Services, on behalf of the Governor, filed petitions with the Illinois Labor Relations Board (ILRB) seeking to exclude certain public employment positions from collective bargaining units. AFSCME, on behalf of the individuals, contested their removal from their collective bargaining units and filed objections to the petitions. The ILRB approved the Governor's decision to strip the individuals' collective bargaining rights. In four of the five administrative cases before us, the ILRB relied exclusively on the positions' title—"senior public service administrator"—for its determination that the Governor's action was appropriate. Section 6.1(b)(2) of the statute permits the Governor to designate, and the ILRB to approve the designation, based solely on the position's title. "Senior public service administrator" is one of the position titles that the statute authorizes the Governor to designate. The ILRB rejected the individuals' request for an evidentiary hearing as well as their constitutional challenges. In the other of the five cases currently before us, the ILRB found that the positions were *Rutan*-exempt (see generally *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990)) and exempt from jurisdiction B of the Personnel Code (20 ILCS 415/8b). Section 6.1(b)(3) of the statute permits

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

the Governor to designate employees, and the ILRB to approve the designation, based on those criteria.

¶ 6    The statute at issue is the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq*. (West 2012)).   The statutory section challenged by the individuals is titled "Gubernatorial designation of certain public employment positions as excluded from collective bargaining."   5 ILCS 315/6.1 (West Supp. 2013).   That section, in pertinent part, provides:

> "The Governor is authorized to designate up to 3,580 State employment positions collectively within State agencies directly responsible to the Governor, and, upon designation, those positions and employees in those positions, if any, are hereby excluded from the self-organization and collective bargaining provisions of Section 6 of this Act.   Only those employment positions that have been certified in a bargaining unit on or after December 2, 2008, that have a pending petition for certification in a bargaining unit on April 5, 2013 (the effective date of Public Act 97-1172), or that neither have been certified in a bargaining unit on or after December 2, 2008 nor have a pending petition for certification in a bargaining unit on the effective date of this amendatory Act of the 97th General Assembly are eligible to be designated by the Governor under this Section. The Governor may not designate under this Section, however, more than 1,900 employment positions that have been certified in a bargaining unit on or after December 2, 2008."   5 ILCS 315/6.1(a) (West Supp. 2013).

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

The statute goes on to provide metrics to instruct the Governor as to which positions qualify for designation.

"To qualify for designation under this Section, the employment position must meet one or more of the following requirements:

(1) it must authorize an employee in that position to act as a legislative liaison;

(2) it must have a title of, or authorize a person who holds that position to exercise substantially similar duties as an, Agency General Counsel, Agency Chief of Staff, Agency Executive Director, Agency Deputy Director, Agency Chief Fiscal Officer, Agency Human Resources Director, Senior Public Service Administrator, Public Information Officer, or Chief Information Officer;

(3) it must be a Rutan-exempt, as designated by the employer, position and completely exempt from jurisdiction B of the Personnel Code;

(4) it must be a term appointed position pursuant to Section 8b.18 or 8b.19 of the Personnel Code; or

(5) it must authorize an employee in that position to have significant and independent discretionary authority as an employee.

> Within 60 days after the Governor makes a designation under this Section, the Board shall determine, in a manner that is consistent with the requirements of due process, whether the designation comports with the requirements of this Section." 5 ILCS 315/6.1(b) (West Supp. 2013).

The statute also provides that the Governor has only 365 days to designate the positions as exempt from collective bargaining (5 ILCS 315/6.1(d) (West Supp. 2013)) and expressly provides that some positions that might otherwise qualify as managerial under the Act cannot be designated (5 ILCS 315/6.1(e), (f) (West Supp. 2013)).

¶ 7    On appeal, AFSCME interposes challenges to the procedural dictates of the statute as well as facial challenges to its constitutionality. Specifically, AFSCME argues that section 6.1: (1) is an unconstitutional delegation of legislative authority to the executive branch; (2) is an unconstitutional violation of the individuals' equal protection rights; (3) constitutes unconstitutional special legislation; and (4) unconstitutionally deprives the individuals of due process of law. Further, AFSCME argues: (5) that the ILRB's refusal to hold an evidentiary hearing on the actual job duties of each position was a misinterpretation of the statute that denied the individuals due process of law; and (6) that the statute impermissibly impaired the collective bargaining agreement that was in place at the time of the designations.

¶ 8    The Illinois Public Labor Relations Act provides that final rulings made by the ILRB under section 6.1 of the statute are directly appealable to this court. To date, it appears that no courts have addressed the constitutionality of section 6.1. For analytical clarity, we will address the procedural questions first and then proceed to analyze whether the statute is substantively

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

unconstitutional.

¶ 9                                        ANALYSIS

¶ 10                            I.   Procedural Questions

¶ 11     The ILRB did not weigh any evidence and we review its decisions on questions of law *de novo*.   *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).   The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *Acme Markets, Inc. v. Callanan,* 236 Ill. 2d 29, 37 (2009).   The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Roselle Police Pension Board v. Village of Roselle,* 232 Ill. 2d 546, 552 (2009).

¶ 12                               A.   Due Process

¶ 13     The government cannot deprive a person of life, liberty, or property without due process of law.   U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.   Procedural due process requires that when a constitutional right is at stake, the person whose right is at issue is entitled to notice and a meaningful opportunity to be heard.   *Chisem v. McCarthy*, 2014 IL App (1st) 132389, ¶ 14. AFSCME argues that section 6.1 deprives the designated employees of their procedural due process rights because it denies them the opportunity to lodge meaningful objections to the designations.   AFSCME additionally contends that the time requirements set forth in the statute do not afford the designated employees their due process rights because the statute only gives them 10 days to file objections and requires the ILRB to act on each of the Governor's petitions within 60 days.

¶ 14     A prerequisite to a procedural due process challenge is that the challenger has a constitutionally protected right that is threatened.   *Id*.   Here, AFSCME has made no showing that

- 7 -

the individuals have such a right. Moreover, there is nothing in the record that would demonstrate that it is impossible or even impractical to comply with the time restraints set forth in the statute. In fact, AFSCME was able to file its objections and the ILRB was able to consider them and rule on them within the time allotted by the statute. Facial challenges to statutes require the challenger to demonstrate that the statute cannot be constitutionally applied under any circumstances. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 38. The time requirements set forth in section 6.1 can be met and, without presenting any evidence that the time requirements effectively prevent an employee from meaningfully challenging the Governor's action, AFSCME has failed to demonstrate that procedural due process concerns render the statute unconstitutional.

¶ 15                                  B.   Evidentiary Hearing

¶ 16     AFSCME challenges the ILRB's refusal to grant the individuals an evidentiary hearing and contends that the individuals do not, in fact, perform managerial duties and that they should have had an opportunity to prove that assertion. It argues that, if the statute is aimed at only removing managers from collective bargaining units in order to increase efficiency, it should not, either intentionally or unintentionally, remove nonmanagerial employees from their collective bargaining units. However, based on the statute's plain language, which is what the ILRB rightfully relied upon here, designated employees are not entitled to an evidentiary hearing when their position is clearly among those subject to designation under the statute. AFSCME does not, and could not, argue that the individuals do not qualify for designation as it is undisputed that the individuals in four of the five cases are senior public service administrators and those in the other case are *Rutan*-exempt. See 5 ILCS 315/6.1(b)(2), (3) (West Supp. 2013).

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

¶ 17    Therefore, regardless of the substantive constitutionality of the statute, there was no procedural violation by the ILRB in this case.   The plain language of the statute requires that the ILRB simply look at the employees' job titles, which it did properly, and nothing in the statute entitled the individuals to an evidentiary hearing.

¶ 18                            II.   Substantive Constitutional Questions

¶ 19    We review the constitutionality of a statue *de novo*.   *Kanerva v. Weems*, 2014 IL 115811, ¶ 33.   Statutes are presumed to be constitutional, and the party challenging the validity of a statute bears the burden of rebutting this presumption.   *Hayashi*, 2014 IL 116023, ¶ 22.   If it is reasonably possible, we are to construe a statute in a manner that upholds its validity and constitutionality.   *Id*.

¶ 20                            A.   Delegation of Power

¶ 21    The legislative, executive, and judicial branches are separate.   Ill. Const. 1970, art. II, § 1.   No branch shall exercise the powers properly belonging to another branch.   *Id*.   The power to make laws belongs solely to the legislature, and the legislature cannot delegate its power to make law.   *Chicagoland Chamber of Commerce v. Pappas*, 378 Ill. App. 3d 334, 348 (2007). Thus, a statute is unconstitutional if the legislature abdicates its lawmaking function by vesting the executive branch with the authority to perform its legislative function.   *County of Cook v. Ogilvie*, 50 Ill. 2d 379, 384 (1972).   This means that the legislature cannot delegate its power to determine what the law should be, but it can delegate the power to execute the law as long as it provides sufficient standards to guide the delegatee in the enforcement of the law.   *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189 Financial Oversight Panel*, 178 Ill. 2d 399, 423 (1997).

¶ 22   AFSCME argues that the delegation here is improper because it gives the Governor legislative authority by authorizing him to determine classifications of employees under the Act without sufficient guiding principles.   Also, AFSCME contends that since the designations selected by the Governor cannot be reversed by a future governor, they have the effect of law.

¶ 23   When delegating its authority, the legislature must provide sufficient identification of:   (1) the persons and activities potentially subject to regulation; (2) the harm sought to be prevented; and (3) the general means intended to be available to the delegatee to prevent the identified harm. *Stofer v. Motor Vehicle Casualty Co.*, 68 Ill. 2d 361, 372 (1977).   Section 6.1 specifically identifies certain categories of management-level employees as the people that are subject to the regulation.   It cannot truly be disputed that the harm meant to be remedied—efficiency in government—is not identified.   The statute's purpose is discernible from the words of the statute, not to mention the legislative history.   Section 6.1 also provides a detailed framework to guide the Governor in his exercise of discretion to expedite removing from collective bargaining units those employees whose duties are incompatible with collective bargaining unit membership and to address the problem of excessive union membership of management-level public sector employees in Illinois.

¶ 24   The Governor was not given a blank check.   He was limited to expressly stated positions, by numerical stipulations, and by the newness of the positions' entry into a collective bargaining unit.   The General Assembly also set up the framework in such a way that the Governor's action was subject to review by the ILRB.   AFSCME argues that the statute gives the Governor so much discretion that he is essentially making the law.   But the strictures on the authority given to the Governor are express and they merely instruct the Governor on how to execute and implement the

law so that he can achieve the general statutory objective.   The policy decision itself was made by the General Assembly.   The General Assembly simply gave the Governor detailed guidelines to carry out the implementation of the statute so as to effectuate an important state interest.

¶ 25    As a practical matter, section 6.1 barely delegated any authority to the Governor that he did not already possess.   All along, the status of the law has been that "managerial employees" are precluded from exercising the right to bargain collectively.   5 ILCS 315/3(n) (West 2012). Under the framework existing before section 6.1 was enacted, the executive branch was entitled to file a petition with the ILRB to exclude positions from collective bargaining units.   The only difference under section 6.1 is that instead of the ILRB conducting an investigation into the duties and functions of the position before exclusion (80 Ill. Adm. Code 1210.170 (2003)), the statute defers to the Governor's knowledge and experience.   That was a rational way to achieve the objective of increased efficiency in positions directly responsible to the Governor.   See *Dorst v. Pataki*, 687 N.E.2d 1348, 1349-50 (N.Y. 1997) (holding that the legislature can constitutionally delegate its authority directly to the governor so that the governor can use his expertise to fill in the details and interstices of its policy choices).

¶ 26    The positions delineated in section 6.1 are occupied by employees who answer to the Governor and should serve at his pleasure.   The General Assembly determined that the Governor was in the best position to decide which of the positions needed to be excluded from collective bargaining units so that the State would operate most efficiently.   The General Assembly can delegate to others the authority to do those things which it might properly do, but cannot do as understandingly or advantageously.   *R.L. Polk & Co. v. Ryan*, 296 Ill. App. 3d 132, 140 (1998). The point of delegating a task to the executive branch is to allow the executive to efficiently

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

accomplish a particular objective using its experience and expertise when the legislative branch could not perform the task with the same expertise or efficiency. As the Supreme Court of the United States has recognized, "our jurisprudence [concerning legislative delegation] has been driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). Recognizing the Governor's unique position as the chief executive charged with managing the workers covered by section 6.1, the General Assembly sought to solve the broader efficiency problem by giving the Governor the authority to expediently exclude top-level managers from their collective bargaining units.

¶ 27    Despite AFSCME's protestations, the fact that the statute only had an effective period of 365 days in which the Governor could implement its provisions does not render the delegation unconstitutional. Furthermore, there is nothing in section 6.1 that prohibits subsequent statutory enactments on this subject should the General Assembly see fit. The State offers multiple rational reasons why the General Assembly might have wanted the Governor to act within 365 days. For example, there is a policy underpinning labor relations generally that favors the expeditious resolution of labor disputes (*Department of Central Management Services v. American Federation of State, County & Municipal Employees (AFSCME)*, 298 Ill. App. 3d 640, 646-47 (1998)) that justifies an abbreviated effective period. In addition, were the grant of authority to endure in perpetuity, one could envision an endless cycle of designations and de-designations causing a chaotic environment in public sector employment. In light of all considerations, a one-year grant of limited authority was reasonable and does not make the delegation unconstitutional.

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

¶ 28                     B.    Equal Protection and Special Legislation

¶ 29    Equal protection and special legislation challenges are judged by the same standard. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 30-31 (2007). Both focus on whether a law treats similarly situated individuals differently.   See *id*. Accordingly, we examine the two issues together.[1]

¶ 30    The guarantee of equal protection requires that the government treat similarly situated individuals in a similar manner.   *In re A.P.*, 2014 IL App (1st) 140327, ¶ 29.   While the United States and the Illinois Constitutions contain separate equal protection clauses (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2), the Illinois Supreme Court has chosen to apply the same analysis to Illinois equal protection claims that is used by federal courts to assess federal equal protection claims.   *In re Derrico G.*, 2014 IL 114463, ¶ 88.   The parties both argue under the presumption that the rational basis test applies, which is correct because section 6.1 neither affects a fundamental right nor does it proceed along suspect lines.   For a statute to pass constitutional muster under the rational basis test, the legislative action must bear a rational relationship to a legitimate legislative purpose and cannot be arbitrary or unreasonable.   *Condominium Ass'n of Commonwealth Plaza v. City of Chicago*, 399 Ill. App. 3d 32, 45 (2010).

¶ 31    Similarly, the Illinois Constitution provides that the General Assembly cannot pass special laws when a general law is or can be made applicable.   Ill. Const. 1970, art. IV, § 13.   This means that the General Assembly is prohibited from passing laws that confer a special benefit on a select group to the exclusion of others that are similarly situated.   *Best v. Taylor Machine Works*, 179 Ill.

---

[1] Although AFSCME never raised a special legislation challenge below and it could be considered forfeited (*Connor v. City of Chicago*, 354 Ill. App. 3d 381, 386 (2004)), because it is intertwined with and requires essentially the same analysis as its equal protection challenge, we have addressed both in this section.

2d 367, 391 (1997). The purpose of the special legislation clause is to prevent the legislature from creating arbitrary classifications that discriminate in favor of a select group without a sound, reasonable basis. *Id*. There are two requisite elements to a successful special legislation challenge: (1) the statutory classification at issue discriminates in favor of a select group, and (2) the classification is arbitrary. *Board of Education of Peoria School District No. 150 v. Peoria Federation of Support Staff, Security/Policeman's Benevolent & Protective Ass'n Unit No. 114*, 2013 IL 114853, ¶ 23. The Constitution does not prohibit all legislative classifications, and where, as here, there is no fundamental right or suspect class at issue, disparate treatment of similarly situated groups is valid as long as it is rationally related to a legitimate state interest. *Big Sky Excavating, Inc. v. Illinois Bell Telephone Co.*, 217 Ill. 2d 221, 237-38 (2005).

¶ 32 There is no dispute, nor can there be, that the State's interest in governmental efficiency is legitimate. Thus, we must decide only whether this statute's means of achieving that interest are rational and are neither arbitrary nor unreasonable. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008). Under rational basis review of a classification for purposes of disparate treatment, the law is presumed to be constitutional, and the state is not required to actually articulate the law's purpose or produce evidence to sustain the rationality of the classification. *Wisconsin Education Ass'n Council v. Walker*, 705 F.3d 640, 653 (7th Cir. 2013) (citing *Heller v. Doe,* 509 U.S. 312, 320 (1993)). Instead, there is a weighty burden on the challenger, who must negative every basis which might support the law because it should be upheld if there is any reasonably conceivable set of facts supporting the classification. *Id*.

¶ 33 To be clear, the statute does not aim to strip particular people of their collective bargaining rights, but is instead focused on those persons' employment positions. Section 6.1 does, in fact,

permit certain employees to be treated differently than others, but not in an unconstitutional manner. There is no constitutional right to public sector collective bargaining (*Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463, 465 (1979)) and the statutory right was given only to nonmanagers (5 ILCS 315/4 (West 2012)). The legislative framework has long been that managers were not permitted to collectively bargain, but the legislature found that many managers had become members of collective bargaining units anyhow. If the individuals were, in fact, managerial employees, then they had no right to collectively bargain in the first place, so removing them from collective bargaining units would not violate their constitutional rights because they had neither a fundamental right nor any property right at stake. See *Kasak v. Village of Bedford Park*, 514 F. Supp. 2d 1071, 1078 (N.D. Ill. 2007) (stating that a public employee who acts as a supervisor, with responsibility to exert control over the employees whom he supervises, has no constitutional right to organize with those same employees in a labor union). Thus, it is not even clear that equal protection concerns are implicated here.

¶ 34    However, even if equal protection concerns are present, we still find that there was a reasonably conceivable set of facts that supports the government treating the individuals differently from other public workers that might be generally classified as managerial-type employees. AFSCME admits that there is a tremendous variance in the duties performed by different high-level positions in different state agencies even if the positions have the same working title or are in the same pay grade. Therefore, it is rational to assume that the General Assembly could countenance removing some employees from bargaining units while allowing others to remain. Here, the General Assembly delegated to the Governor the power to classify certain top-level employees as distinct from other general managerial workers. Under the

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

circumstances, separating certain managerial employees from other managerial-type employees is a permissible classification where the State's needs demand that the Governor has undivided loyalty from some chosen top-level managers. See *State Management Ass'n of Connecticut, Inc. v. O'Neill*, 529 A.2d 1276, 1281 (Conn. 1987) (holding that neither state nor federal equal protection concerns prevented the state from separately classifying "supervisory employees" as distinct from "managerial employees" to ensure that the state has the undivided loyalty of its top-level personnel).

¶ 35 It was reasonable for the legislature to make a determination that the Governor's participation was warranted to remove certain high-level managers from collective bargaining units so that he could effectively run his executive department as he sees fit. The Governor is in the best position to know which employees' positions entail policy-related and discretionary responsibilities and which do not. Rather than inefficiently micro-managing the process itself or requiring the Governor and the ILRB to go through the lengthy classification process for each employee, the General Assembly gave the Governor an efficient tool to reassign employees whose positions he believed were incompatible with collective bargaining unit membership. Giving the Governor the authority to classify those from whom the State demands undivided loyalty as unsuitable for collective bargaining unit membership is a reasonable method to achieve the direct objective of section 6.1. The task of classifying persons inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line. *Mathews v. Diaz*, 426 U.S. 67, 83-84 (1976). While section 6.1 might not be a perfect fit or even a complete solution to the efficiency problem, it does further the General Assembly's asserted objective of balancing the overall number of management-type employees in collective bargaining

- 16 -

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

units.

¶ 36   AFSCME also argues that the legislation is unconstitutional because the General Assembly limited designations to newer entrants to collective bargaining units and because it passed a second public act that added specific exceptions concerning which positions could be designated. However, in its debates, the General Assembly recognized that collective bargaining unit membership among managers was an increasingly serious issue over the past several years.   The General Assembly could have concluded that this statute was a rational way to stem the problem and reverse the upward trend.   The General Assembly's rationale appears to be something of a grandfather clause, which does not implicate equal protection concerns here because the parties are not similarly situated.   See *Jucha v. City of North Chicago*, No. 13 C 8629, 2014 WL 4696667, at *7 (N.D. Ill. Aug. 6, 2014).   In addition, the express exceptions set forth in subsections (e) and (f) could reasonably be seen to demonstrate that the General Assembly was simply further refining the grant of authority to the Governor in order to give even more thorough direction to guide his exercise of delegated authority.   It may also be that the General Assembly eventually recognized that the positions set forth in subsections (e) and (f) were, in fact, compatible with collective bargaining unit membership.

¶ 37   AFSCME intimates that the General Assembly had some ulterior motive for its classification—*i.e.*, some animus directed at AFSCME—because employees in other collective bargaining units were protected from designation.   A governmental classification must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could supply a rational basis for the classification.   *Heller v. Doe,* 509 U.S. 312, 320 (1993).   It is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

distinction actually motivated the legislature. *United States R.R. Retirement Board v. Fritz*, 449 U.S. 166, 179 (1980). Even a showing of animus is insufficient where there is an otherwise legitimate state purpose and a rational basis for its implementation. *Wisconsin Education Ass'n*, 705 F.3d at 654. Here, as set forth above, the law is rationally related to an important state interest. In addition though, the record reveals that certain members of AFSCME received the benefit of the statute. The Governor was also the one to make the ultimate decisions under the statute so the motivations of the General Assembly are irrelevant. There is no indication in the record that the Governor used the authority granted to him in an arbitrary or capricious manner. Thus, we are not persuaded that the existence of any improper motive is demonstrative of the unconstitutionality of the statute.

¶ 38    Some additional considerations militate in favor of upholding the statute. For example, AFSCME provides no reasoning as to why it simply did not have these positions reclassified at some point prior to designation. If the employees are not really managers, then they could have filed clarification petitions and had their positions certified as general public employees and avoided designation altogether. In addition, AFSCME has not made any showing that these designations are even conclusive. If AFSCME's arguments are correct, meaning that the individuals are not actually managers, AFSCME has provided no reason why the individuals cannot simply file a clarification petition to be reclassified as public employees thereby reobtaining collective bargaining unit membership. It seems as though AFSCME is simply trying to have it both ways: for the individuals to keep their managerial status and the benefits that come along with that; and also to keep their collective bargaining unit membership and the benefits that come along with that.

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

¶ 39    Because we find that the State has a legitimate interest in the efficiency of state government and a rational basis for treating some top-level managers differently than other managerial-type workers, we find that the statute does not violate the individuals' equal protection rights.

¶ 40                    C.    Substantive Due Process

¶ 41    AFSCME's arguments that section 6.1 violates the individuals' substantive due process rights are forfeited because they were not raised before the ILRB.   *Connor*, 354 Ill. App. 3d at 386.   Regardless, all of the substantive due process arguments made by AFSCME are significantly intertwined with the other substantive constitutional questions and have been duly addressed above.   AFSCME's claim that the statute violates the individuals' substantive due process rights fails.

¶ 42                    D. Impairment Of Contract

¶ 43    AFSCME argues that section 6.1 unconstitutionally impairs the collective bargaining agreement that was in place when the statute was passed.[2]   AFSCME maintains that the individuals had ongoing contractual rights that endured, and could not be impaired, at least until the operative collective bargaining agreement expired.

¶ 44    The contracts clause provides that states cannot pass laws that impair the obligation of contracts.   U.S. Const., art. I, § 10; Ill. Const., art. I, § 16.   A statute violates the contracts clauses of the state and federal constitutions when it operates as a substantial impairment of a contractual relationship.   *Nissan North America, Inc. v. Motor Vehicle Review Board*, 2014 IL App (1st) 123795, ¶ 37.   All contracts are subject to the police power of the state and, as a result, the state

_____

[2] The State filed a motion seeking leave to file additional authority; to have the court consider the recently decided case *International Union of Operating Engineers Local 965 v. Illinois Labor Relations Board, State Panel*, 2015 IL App (4th) 140352.   That motion was taken with the case, and it is now Granted.   The court has considered that case in arriving at this holding.

- 19 -

may infringe on a person's contractual rights in order to safeguard the interests of its people. *Consiglio v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 121142, ¶ 40. To determine whether a law impermissibly impairs a contract, we examine:   (1) whether there is a contractual relationship; (2) whether the law at issue impairs that relationship; (3) whether the impairment is substantial; and (4) whether the law serves an important public purpose.   *Nissan*, 2014 IL App (1st) 123795, ¶ 37.   Additionally, when the state is one of the parties to the contract that is allegedly impaired, a higher level of scrutiny is imposed in our impairment analysis because there is a possibility that the state is acting out of self-interest.   *Consiglio*, 2013 IL App (1st) 121142, ¶ 38.

¶ 45     Section 6.1 of the statute does not constitute impermissible impairment of contract.   The contract that AFSCME complains is impaired is between it and the State, not any individuals and the State.   The designations under section 6.1 simply represent that the employees in certain positions are no longer permitted to be members of collective bargaining units; which changes the composition of the bargaining unit, but has no effect on any bargained-for terms of the contract. Once an individual's statutory right to be part of that unit ceases to exist, the benefits flowing to that individual cease as well.   There is nothing in the agreement that gives a specific individual or even a specific employment position the right to be in the collective bargaining unit.   That flows from the statute.   The employee must have an enduring statutory right to be in the collective bargaining unit in order to reap any contractual rights from the agreement.

¶ 46     Moreover, the collective bargaining agreement contemplates changes to the law and changes to the composition of the collective bargaining unit.   See *State v. State*, 364 Ill. App. 3d 1028, 1033-34 (2006); see also 80 Ill. Adm. Code 1210.170 (2003) (explaining that changes in

Nos. 1-13-3454, 1-13-3605, 1-13-3908, 1-13-3909, and 1-13-3910, Cons.

statutes and case law can result in an employee's loss of the right to collectively bargain).   As set forth above, the established procedures for adding or removing positions from the collective bargaining unit have long been in place and a reclassification of employees does not constitute a breach or an impairment of an existing collective bargaining agreement.   The individuals here had no vested right, constitutional or otherwise, to remain in the unit until the agreement expired and changes to their status were foreseeable.   Once an employee is reclassified as a managerial employee, he or she loses the right to any benefits flowing from the agreement going forward. See, *e.g.*, *International Union of Operating Engineers Local 965 v. Illinois Labor Relations Board, State Panel*, 2015 IL App (4th) 140352, ¶¶ 31-32 (holding that the legislature is entitled to make changes to the composition of a collective bargaining unit during the effective period of the collective bargaining agreement); *Illinois Office of the Comptroller*, 30 PERI, ¶ 282 (ILRB State Panel 2014) (explaining that a change in the law that occurs after the bargaining agreements are executed that alters the bargaining unit's composition should be prospectively applied; rejecting the collective bargaining unit's argument that the employees could only be excluded following the expiration of the operative collective bargaining agreement).   Accordingly, section 6.1 does not impermissibly impair the collective bargaining agreement.

¶ 47                                Conclusion

¶ 48    Having considered the legislative measures enacted by the Illinois General Assembly and reviewed the contentions put forth by AFSCME, we affirm the decisions rendered by the Illinois Labor Relations Board.

¶ 49    Affirmed.